# ‖ Wilson *against* Clarke.

A vendor cannot maintain an action to recover the purchase money of land, upon a parol agreement of sale, and proof of performance of the contract on his part: but he may recover damages from the vendee on the parol agreement.

ERROR to the Common Pleas of *Luzerne* county.

Arnzi Wilson against Stephen Clarke. This was an action on the case in which the plaintiff declared upon a parol agreement between him and the defendant, by which he, the plaintiff, agreed to sell to the defendant a certain tract of land for the sum of $200, which the defendant agreed to pay; alleging performance on his part by tender of a deed, and claiming to recover the amount of the purchase-money. On the trial of the cause the plaintiff asked leave to file a new count charging the defendant with damages for not complying with his contract. This was objected to by the defendant, and the court refused to permit it to be filed.

The court charged the jury " that this was a palpable case under the Statute of Frauds. The plaintiff proves a conversation between him and the defendant, in which the defendant agreed to purchase the land to which plaintiff had title, to pay certain liens, and to give plaintiff $100. No memorandum in writing was made, no possession taken, no money paid; and this being the case, the plaintiff is not entitled to recover for the price of the land. But he claims to recover under the last count of his declaration, because he drew a deed of this land, which he afterwards executed and offered to defendant. The evidence relating to this point is that given by Philips Wilson. In the course of the conversation relating to the purchase of the land, he says the defendant told the plaintiff he did not want an assignment of the old deed, but wanted a new, fair deed, as there were several assignments upon the old deed, and he had rather be at the expense of a new deed, than to take an assignment of the old one. The plaintiff made out a deed for the land, but the contract for the land was

not closed and carried into effect.   The plaintiff, under these circumstances, is not entitled to recover for making out the deed."

*Wurtz*, for plaintiff in error, cited 1 *Dall.* 447; 1 *Binn.* 378; 4 *Dall.* 152; 5 *Binn.* 131; 7 *Watts* 530 ; 4 *Watts* 332.

*Jones* and *Butler* contra, cited 1 *Watts* 392; 3 *Watts* 37, 253; 6 *Watts* 464; 9 *Watts* 85 ; 2 *Rawle* 53; 3 *Penn. Rep.* 362.

The opinion of the Court was delivered by

GIBSON, C. J.—As the plaintiff might have entitled himself to damages for the breach of the contract, if not to the purchase money, his count adapted to that alternative, ought to have been received as an amendment of the declaration; and as he was, in any event, entitled to compensation for preparing the conveyance, the jury were misdirected on that head.   For these causes, the judgment is to be reversed ; but the important question is whether the contract, as regards specific execution of it, is prohibited by the Statute of Frauds.

It is certainly true in relation to this particular point, that we have enacted only the first three sections of the British statute ; and that these operate only on the estate proposed to be granted by a verbal sale, and not on the contract as a subject of damages. But I cannot accede to the consequence attempted to be drawn from it, that an action such as this may be maintained for the purchase money.   By our practice, such an action is substituted for a bill to enforce specific performance, which, though it be for a personal matter, equity entertains, as it is said in *Lewis v. Lechmere*, (10 *Mod.* 506) on the foundation of reciprocity, in order to give the vendor, in fairness, the same assistance from the extraordinary powers of the court that may be had by the vendee ; and it is a cardinal principle that a chancellor, when uncontrolled by arbitrary enactment, executes no contract which is not the source of mutual obligation and mutual remedy.   Thus in *Bromley v. Jefferies*, (2 *Vern.* 415) a father's covenant to let his daughter's husband have his estate for £1500 less than any other purchaser, was refused to be executed, not only because the agreement was uncertain, but because the husband was not bound to take the estate at all events.   So in *Armiger v. Clarke*, (*Bunb.* 111) an agreement by a tenant for life to sell the fee, was not allowed to be enforced by the remainder-man, because he was not himself bound by it.   So likewise in *Lawrenson v. Butler*, (1 *Sch. & Lef.* 13) where a tenant for life under a marriage settlement with power to make leases by consent of the trustees, for any term of years or lives with covenant of perpetual renewal, had let the premises by a memorandum in writing to the plaintiff with notice of the settlement, but without the consent of the trustees ; the plaintiff

[Wilson v. Clarke.]

having offered to take a lease to be void against issue male, insisting that the defendant ought to be compelled at least to give that, had his bill dismissed by Lord Redesdale, because the defendant would not also have been entitled to call for an execution of the agreement. This principle of reciprocity is conclusively estab- blished by these and other cases; but certain decisions on particular words in the British Statute of Frauds are exceptions to it. Thus in *Hatton* v. *Gray*, (2 *Ch. Ca.* 164), which was decided only seven years after the enactment of the statute, it appeared that Hatton had sold Gray houses for $2000, and that a note of the agreement was made by Hatton but signed only by Gray; on which it was objected that by reason of the statute, the note did not bind any one but the party who had signed it, and that in equity both must be bound or neither: but it was decreed otherwise. This led the way, in the fifth year of Queen Anne, to *Coleman* v. *Upcot*, (5 *Vin.* 528), in which it was decided that as the plaintiff had, by his bill, submitted to perform the agreement, it was not necessary that it should have been signed by more than the defendant, the Lord Keeper remarking that it was " directly within the Statute of Frauds as being an agreement signed by the party to be charged with the same." Then came *Owen* v. *Davies*, (1 *Vez. Sen.* 82), in which the court held the defendant to performance of the agreement because he had signed it, though the plaintiff had not; but rather on the ground of what was then supposed to be part execution of it by payment of the purchase money, than on the words of the statute. This was in 1747; and I find no further decision on the point till it was brought into view in *Lawrenson* v. *Butler* already quoted; and in that case Lord Redesdale said it would be difficult to find a *late* case of performance where only one party was bound by the agreement; that it had been considered sufficient in *Hatton* v. *Gray* for the agreement to have been signed by the party to be charged, because such were the words of the statute, which, however, were only negative and did not require every agreement so signed to be executed; and that to give the statute the construction desired, would indeed make it a Statute of Frauds, inasmuch as it would enable any one who had procured the signature of another to an agreement to make it an agreement or not, at his pleasure. Notwithstanding the soundness of this reasoning, and the room left by the statute for interpretation, Lord Eldon inconsiderately and unfortunately said in *Seton* v. *Slade*, (7 *Vez.* 275), which came up for decision on another ground: " I need not address myself to the consideration of what is the precise principle with much industry, for no authority would support me in saying, that under the particular circumstances of this case, the defendant can resist a decree if a good title can be made. The agreement is signed by the defendant, Slade, only; but that makes him, within the stat-

[Wilson v. Clarke.]

ute, a party to be charged." The deference justly conceded to the opinions of that great man, led the professional mind to acquiesce in an erroneous interpretation which had before been but imperfectly established; and his dictum has been followed without much apparent consideration in *Fowle* v. *Freeman*, (9 *Vez.* 351); *Huddleston* v. *Briscoe*, (11 *Vez.* 583); *Stratford* v. *Bosworth*, (2 *Vez. & B.* 341); *Western* v. *Russell*, (3 *Vez. & B.* 188); and *Lord Ormond* v. *Anderson*, (2 *Ball & Beatty* 370). In *Western* v. *Russell*, the master of the rolls said he did not feel himself at liberty to refuse a decree of specific performance, " notwithstanding the *considerable doubt* thrown on that point by Lord Redesdale." Be that as it may, the preceding cases were decided certainly on no principle of general equity, but on the peculiar and, as it was supposed, mandatory words of the Statute of Frauds. For the rest, I cannot do better than quote the conclusion of Chancellor Kent on a review of the cases in *Clason* v. *Bailey*, (14 *Johns.* 489), in which he said: " I have thought, and have often intimated, that the weight of argument was in favour of the construction that an agreement concerning lands, to be enforced in equity, should be mutually binding; and that the one party should not be at liberty to enforce, at his pleasure, an agreement which the other party was not entitled to claim. It appears to be settled in *Hawkins* v. *Holmes*, (1 *P. Wms.* 770), that though the plaintiff has signed the agreement, he never can enforce it against the party who has not. The remedy, therefore, in such cases, is not mutual. But notwithstanding the objection, it appears from the review of the cases, that the point is too well settled to be now questioned."

The legislature of New York has enacted the British Statute of Frauds almost entire, at least retaining the fourth section, which declares, among other things, that no action shall be brought "to charge any person on any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, unless the agreement on which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized;" and hence the conclusion to which the chancellor's mind was reluctantly brought by the British authorities. But we are enabled to escape it, by the fact that this section has been omitted in the statute of Pennsylvania. That being so, it may be demanded, why should not a verbal sale be enforced indifferently by either party in strict accordance with the principle of mutual obligation? Simply because the prohibition in our statute has been thought to extend to equitable as well as legal interests. But even were the whole of the British statute in force here, it would be fatal to the plaintiff's action; for no memorandum of the bargain has been put in writing or signed by

I. — 2 w *

[Wilson v. Clarke.]

either party. To say this much might be sufficient for the occasion; but it would be improper to leave it uncertain whether the just and wholesome principle which requires mutuality of obligation were displaced by any arbitrary anomaly, or whether we were at liberty to avoid the monstrous injustice of allowing one of the parties to a sale to make it binding or not, as his interest should be affected by a rise or depreciation of the property. As the contract, then, could not be mutually enforced, it shall not be enforced at all; though the plaintiff may, perhaps, recover damages for a breach of it.

Judgment reversed, and a *venire facias de novo* awarded.