# M'Clowry *versus* Croghan's Administrator.

1. The rule or measure of damages for the breach of *a contract to lease*, is the same as for a breach of *a contract to sell land.*
2. A. bought of the tenant an unexpired lease, upon agreement with the landlord that he would renew it. The landlord and remainderman each refused to renew, and the landlord died before the expiration of the lease; *Held*, that the measure of damages in a suit by A. against the landlord's administrator, is the *price paid for the lease and its interest*, and *not the value of the contract.*
3. If a " tenant for life make a lease for years, and die before its expiration, and the remainderman evict the lessee, no action on the implied covenant will lie against the executor of the lessor."—Per WILLIAMS, Judge of District Court, approved by the Supreme Court.

ERROR to the District Court of *Allegheny county.*

The action below was trespass on the case, by M'Clowry, the plaintiff in error, to recover damages from the administrator of William Croghan, for the breach of a contract to renew for the term of five years, a lease of certain premises held by M'Clowry under a prior lease, about to expire.

The contract for renewal was shown by *parol* testimony, and by a *written* memorandum signed by the plaintiff and defendant, as follows :

"I hereby certify, that the leasehold of property at the point on Penn street, late in the occupancy of P. Trainer, whose interest was purchased at sheriff's sale by John N. M'Clowry, which said property is described in a lease from Jean Barbeau to Samuel

Roseburg, dated May 26, 1830, was by agreement of Mr. Croghan, in his lifetime, to be renewed to said M'Clowry for a period of five years from and after the 1st day of April, A. D. 1851, for a consideration to be named, which said consideration is to be of an annual ground rent, besides all taxes assessed and to be assessed on said property, which said renewal of said lease is to be executed or completed and delivered on or before December 1, 1850.

C. B. SCULLY, <i>Agt.</i><br>JOHN N. M'CLOWRY."

Mr. Croghan had a life estate in the premises, and died on the 22d of September, 1850. Frequent demands for the renewed lease were made in his lifetime. The premises with other lands had been originally demised by Croghan to Jean Barbeau, under a lease for twenty-one years from the first of April, 1830, expiring 1st April, 1851, and were sub-let by Barbeau to Roseburg for twenty years by lease. By subsequent assignments, the lease having become vested in Patrick Trainer, the unexpired term of which was purchased at sheriff's sale, by M'Clowry, for $36. The value of the annual rent was proved to be worth $200 per annum, and the jury, making allowance under the instruction of the court, for all taxes, assessments and risks, ascertained the value of the lease for the five years term, agreed to be renewed at $540, and returned a verdict for the plaintiff in that sum, subject to the opinion of the court on the following reserved point :

"The defendant's counsel requests the court to charge the jury, that the rule or measure of damages for the breach of the alleged contract in this case, is the actual loss or consideration paid by plaintiff; and that not having paid the intestate anything in consideration of the alleged contract, all that plaintiff is entitled to recover, is the sum of $36, and interest, paid for Trainer's unexpired lease ; but the court refused to charge as requested by defendant's counsel, and instructed the jury, *pro forma*, that the value of the lease agreed to be given, or of the contract at the time of the breach, is the proper measure of damages, and that plaintiff is entitled to recover whatever the lease, if given, was worth, or would have brought in the market, as of the date of the breach ; reserving the question for the further consideration of the court in banc; and if, upon such consideration, the court should be of opinion that the value of the lease, or contract, is the proper measure of damages, as charged, then judgment to be entered for the plaintiff on the verdict, for the amount found by the jury ; but if the court should be of opinion that the rule of damages is not as charged, and that the plaintiff is not entitled to recover the value of the contract, or damages for the loss of the bargain, but only the actual loss sustained, or the consideration paid for Trainer's unexpired term in the premises, (on the assurance of the lease being renewed,) viz., the sum of $36, with

[M'Clowry v. Croghan's Administrator.]

interest, then the finding of the jury to be modified and reduced by the court to said amount, and judgment to be entered for the plaintiff on the verdict, so modified, for said sum of $36, and interest, notwithstanding the finding of the jury for a larger amount."

After argument, the court entered judgment in favor of plaintiff, for $49.72, *non obstante veredicto*.

Opinion of the District Court.

" WILLIAMS, J.—This is an action to recover damages for the breach of a parol contract between the plaintiff and defendant's intestate, by which the latter, in consideration of an annual rent of twenty or twenty-five dollars, agreed to renew, for a period of five years from the 1st of April, 1851, the lease of certain premises, (in which the intestate had a life estate,) in the occupancy of Patrick Trainer, under a lease for years, ending April 1st, 1851, whose interest or unexpired term the plaintiff purchased at sheriff's sale. By the agreement between the parties, the renewed lease was 'to be executed, completed and delivered, on or before December 1, 1850.' The intestate died, without having executed the lease, on the 22d September, 1850, and the remainderman refused to execute a lease for the premises, on the terms of the contract between the plaintiff and the tenant for life. It was not alleged on the trial, nor was any evidence given tending to show, that the plaintiff had paid the intestate anything as a consideration for the contract; but some evidence was given, tending to show that he had purchased the interest of Patrick Trainer in the unexpired lease, at sheriff's sale, on the faith of the assurance of intestate's agent that the lease would be renewed, and that he had paid therefor the sum of thirty-six dollars. The defendant's counsel contended, that the amount paid for Trainer's unexpired term, with interest, was all that plaintiff was entitled to recover as damages, for the breach of the alleged contract. But the court instructed the jury, *pro forma*, that the plaintiff was entitled to recover the value of the lease agreed to be given, as of the date of the breach—reserving the question as to the true measure of damages, for the further consideration of the court in banc. The jury found a verdict for plaintiff, and assessed his damages at five hundred and forty dollars.

" Did the court rightly instruct the jury as to the true rule or measure of damages for the breach of the contract declared on and found by the jury? Is the plaintiff entitled to recover the value of the contract as found, or should his damages, under the facts of this case, be limited to his actual loss, or the amount paid and expended on the faith of the agreement? It seems to me that the rule or measure of damages for the breach of *a contract to lease*, ought to be the same as for the breach of *a contract to*

[M'Clowry *v.* Croghan's Administrator.]

*sell land.* What, then, is the measure of damages for the breach of a contract to sell, where the vendor acts with good faith and without fraud, but is incapable of making a title to the land? The rule of damages applicable in such a case, has become text-book law, and is thus stated in Sugden on Vendors: 'If the purchaser affirm the agreement by bringing an action for non-performance of it, he will obtain nominal damages only, for the loss of the bargain, because a purchaser is not entitled to any compensation for the fancied goodness of his bargain, which he may suppose he has lost, where the vendor is, without fraud, incapable of making a title.' Sugd. Vend., (7 Am. ed.,) vol. 1, (t. p.) 491, (m.) 425. See note, and the authorities cited. The same rule is laid down in other text books: 2 Pars. on Contr. 503–506; 2 Greenl. Ev. (5th ed.) sect. 261, note 3: and is amply sustained by authority. *Flureau* v. *Thornhill,* 2 W. Black. 1078; *Walker* v. *Moore,* 10 B. & C. 416; *Baldwin* v. *Munn,* 2 Wend. 299; *Shannon* v. *Comstock,* 21 Id. 460; *Peters* v. *M'Keon,* 4 Denio, 546. In *Peters* v. *M'Keon,* the court say: 'On an executory contract for the sale of land which the vendor believes to be his own, and when there is no fraud on his part, if the sale falls through in consequence of a defect of title, the measure of damages is substantially the same as it is in the case of an executed sale. If the vendee has paid any part of the consideration, he may recover back the money with interest. But he can recover nothing for the loss of a good bargain.' This rule is also recognized and affirmed in *Bitner* v. *Brough,* 1 Jones, 127, and in *M'Dowell* v. *Oyer,* 9 Harris, 417. In this last case the court say: 'In an ordinary case, the vendee is compensated by recovering back so much of the purchase-money as he has paid; or by nominal damages, if he has paid nothing. But he may prove that the land rose in value after the contract, or that it was worth more at the time of the contract than he agreed to give, (1 Jones, 127,) and, if he does so, the vendor must respond for the difference.' But the vendor is only liable for the difference in value, where he might make the title and does not, or where he has acted with bad faith. For further on, in the same opinion, the court expressly declare, that, 'where he is not able to comply with his contract, and is guilty of no default or bad faith, he is not obliged to pay the vendee for the loss of his bargain.' Any other rule would be inconsistent with the doctrine laid down in *Bitner* v. *Brough,* (1 Jones, 139,) and in all the other cases cited.

"In this case, the intestate was guilty of no default or bad faith. He died before he was bound to execute the lease, and his estate in the premises was determined by his death. It was not possible for his administrator to execute the contract, and the intestate was prevented from doing it by an event over which he had

[M'Clowry *v.* Croghan's Administrator.]

no control. And, therefore, according to all the authorities, the plaintiff is not entitled to recover damages for the loss of his bargain; in other words, *the value of the contract* is not the measure of damages, in this case, for its breach.

"But there is another aspect in which the case may be regarded, which seems to me equally decisive of the point as to the true measure of damages for the breach of a contract like this. The intestate had but a life estate in the premises. It is well settled that the covenants of warranty and for quiet enjoyment, implied from the words of leasing in an indenture of lease for years, last no longer than during the life of the lessor. If, therefore, 'a tenant for life make a lease for years, and die before its expiration, and the remainderman evict the lessee, no action on the implied covenant will lie against the executor of the lessor.' Rawle on Cov. 362–364; 2 Bac. Abr. (Bouv. ed.) Cov. (E.) 564; Platt on Cov. 459; *Gervis* v. *Peade*, Cro. Eliz. 615; *Swan* v. *Stransham*, Dy. 257, A.; *Adams* v. *Gibney*, 4 M. & P. 491; S. C., 6 Bing. 656: though the law is otherwise on an express covenant for quiet enjoyment. Platt on Cov. 459. And the reason for the distinction is, that the covenant in law expires with the term. Dy. 257, A. But in this case there is no evidence of any agreement for an express covenant for quiet enjoyment; nor anything from which such an agreement can be fairly inferred. On the contrary, the strong presumption is, that the intestate, for the trifling rent of twenty or twenty-five dollars, would not have agreed to give an express covenant for the quiet enjoyment of premises worth, according to the evidence, two hundred dollars a year, clear of the rent and taxes, and upon which, in case of his death, his estate might be made responsible in damages for an amount greatly exceeding the rent. If, as the authorities show, the plaintiff could not have maintained covenant, if the intestate had executed the lease according to the terms of the agreement, it does not seem reasonable that in an action for its breach he should be allowed to recover as damages, the value of the contract as found by the jury.

"In point of fact, the plaintiff is in no worse position than he would have been if the lease had been executed; it would have become valueless, on the death of the tenant, for life. Why, then, in an action for the breach of the agreement to execute the lease, should the plaintiff recover damages for the loss of the bargain, when he could maintain no action for the recovery of damages on the implied covenants of warranty and for quiet enjoyment, if the lease had been executed and delivered in the lifetime of the intestate? Surely the law will not tolerate such an incongruity; and for the failure to execute the lease, the plaintiff can only recover the actual loss or consideration paid.

"It is therefore ordered that the verdict of the jury be modified

[M'Clowry v. Croghan's Administrator.]

and reduced to the amount paid by plaintiff for the interest or unexpired term of Patrick Trainer, in the premises, with interest thereon to the date of the verdict, amounting to forty-nine dollars and seventy-two cents, ($49.72) and that judgment be entered for the plaintiff, on the verdict so modified, to wit: for the sum of forty-nine dollars and seventy-two cents, *non obstante veredicto.*

"To which opinion of the court upon the point reserved, the counsel for the plaintiff except, and at their instance this bill of exception is sealed."

The following are the errors assigned:

1. The court erred in modifying and reducing the amount of the verdict from $540 to $49.72.

2. The court erred in rendering judgment on the point reserved, for only $49.72; whereas, it should have been entered for the whole amount of the verdict.

*E. M. Stanton,* for plaintiff in error.

1. The only question here, is the rule of damages. For the plaintiff in error, it is claimed that the proper rule is the one on which the jury were instructed to assess damages, viz: the value of the lease as of the date of the breach.

In the court below, the judge, erroneously following the case of *Peters* v. *M'Keon,* 4 Denio, 546, assumed the arbitrary rule in regard to the sale of lands to be the rule of damages governing this case. The reasoning of Judge Bronson in the case cited, and the authorities referred to by him, are followed in the judgment below. With sufficient industry it might have been discovered that the New York courts, going still further, have held that even under an express covenant for quiet enjoyment, a lessee could recover no more than the rent paid, and interest. 14 Wend. 38, 41; 2 Hill, 105. But this rule, as is said by acknowledged authority, "destroys the value of all the usual covenants in leases, and is *against the general principle* in regard to chattels, by which, if a warranty fails, the plaintiff is entitled to recover the difference between their actual value and that which they would have had if the warranty had been complied with." Sedgewick on Damages, 169.

And in a late case, the Court of Appeals in New York corrected the former error of their tribunals. In the case of *Trull* v. *Granger & Dillave,* 4 Selden, 115, it was held that, "on the breach of a contract for the lease of premises, the *difference* between the rent and the yearly value is the true measure of damages." Nor in such case does it make any difference as to the measure of damages, whether the action be in contract or in *tort.* Ib.

Two Pennsylvania cases were cited by the court below, *Bitner* v. *Brough,* 1 Jones, 127, and *M'Dowell* v. *Oyer,* 9 Harris, 423. In *Bitner* v. *Brough,* the court were applying the rule of damages

[M'Clowry v. Croghan's Administrator.]

on a covenant for the *purchase and sale* of lands, a rule strictly technical and arbitrary, deriving its origin from the feudal system, and against the general principle applied to other chattel interests. And certainly, if there be any analogy between *M'Dowell* v. *Oyer*, 9 Harris, 417, and the case at bar, it is that *the value* of the thing contracted for and the price paid, affords the true measure of damages. It was held in *Hopkins* v. *Lee*, 6 Wheaton, 109, that on a contract of sale the value at the time of the breach was the true measure of damages. "Nor can it make any difference in principle, whether the contract be for the sale of real or personal property." 5 U. S. Cond. Rep. 27.

There is, therefore, no countenance for the opinion of the judge below to be found in any adjudged case in this State. In New York it has been overruled. *Trull* v. *Dillaye & Granger*, 4 Selden, 115. And this being the first occasion for enunciating the rule of damages here upon a large and valuable class of contracts, that rule is to be ascertained by observing correct analogies, and following just principles.

2. It appeared to the district judge, "that the rule or measure of damages for the breach of a *contract to lease*, ought to be the same as for the breach of a *contract to sell land.*" And that the rule of damages for the breach of a contract *to sell*, where the vendor acts with good faith and without fraud, has become "*text-book law.*" It is said in Sugden on Vendors, relying upon the case of *Flureau* v. *Thornhill*, Blackstone's Reports, 1078, that a vendor is not entitled to any compensation for the fancied goodness of his bargain. This case of *Flureau* v. *Thornhill*, as stated in Sugden on Vendors, is followed by the New York cases and all the other cases cited by the district judge. And yet that case, although the groundwork for numerous *dicta* prescribing the rule of damages for the *sale of land*, affords no color for any such rule. The sale was not of land, in the sense in which we use that term, but was the sale of a *rent charge*, at auction. Two judges, De Grey and Gould, rested their opinion upon what they conceived to be the general principle governing all auction sales, without distinction as to land or personalty, while Blackstone's opinion was grounded upon a condition of such sales, generally expressed and "always implied," by which the return of the deposit with interest and costs was all that could be expected.

That the peculiar mode in which sales of real estate were usually effected in England, and the express or implied condition of such sales materially, also, influenced the views subsequently held by the judges there, is evinced in the case of *Hopkins* v. *Grazebrook*, 13 Eng. Com. Law, 100, where, notwithstanding *Flureau* v. *Thornhill*, 2 Blackstone; *Johnson* v. *Johnson*, 3 B. & P. 167; *Brig's case*, Palm. 364; *Bratt* v. *Ellis*, Sugden on Vendors, Appendix, 7; *Jones* v. *Dyke*, Ib. 8, it was held that

[M'Clowry *v.* Croghan's Administrator.]

a purchaser might recover damages for the loss he sustained in not having the contract carried into effect. *Walker* v. *Moore*, 21 Eng. C. L. 100.

In this country, the same diversity and uncertainty as in England, has been manifested as to the rule of damages on contracts *to sell* land. *Hopkins* v. *Lee*, 6 Wheaton, 109.

Even upon the *covenant of warranty for land*, the rule of damages has been established differently by different tribunals. In Pennsylvania and many of the States, the consideration-money and interest is adopted as the measure; while in Massachusetts and other States, the *value* of the land at the time of eviction, furnishes the rule. 2 Greenleaf's Evidence, sec. 264.

Now, the judge of the District Court was not only unable to give any reason why "the measure for a breach of *a contract to lease*, ought to be the same as for a breach of a *contract to sell* land, but examination shows that neither in this country nor in England, is there any certain rule on *contracts to sell*. But the latter rule, as is said by Sedgwick, being merely arbitrary, originates in an ancient system and views in respect to land, quite different from what now prevails; and as the rights and interests that pass by sale or lease are in many respects quite different, it would seem rather that the measure of damages on *lease* and *sale, ought not* to be the same. The contract being merely a personal contract, analogy to other personal contracts will furnish a more just rule.

3. Upon a covenant of warranty for land, whatever its origin or reason, the rule is well settled in Pennsylvania that the price paid, and interest, is the measure of compensation. But, upon the breach of a contract for chattels, the rule is equally well established that the measure of compensation is not the price of purchase, but the value of the thing at the date of the breach. Now, a leasehold for years being merely a chattel interest, the true analogy would seem to be furnished by the rule of chattel-contracts, rather than by land sales. The object of damages being compensation, and to place the party as nearly as possible in the same position as if the contract had been performed, it is plain that the *value* must be the minimum measure; while, therefore, fraud, deceit, or other misconduct, occasioning loss, might enhance the measure; the absence of such elements cannot reduce the standard below the full value of the thing contracted. And such is the *civil* law. By it no distinction is made as to the rule of damages in respect to real or personal property. As with chattels, so with land; the increased value is to be taken into account, and for this the party evicted had a right to claim. But there is a difference where the default happens through fraud or bad faith, in which case the damage may be enhanced. And even where the default is by unforeseen contin-

gencies, the seller is liable to the *highest sum* to which the parties might have supposed the value would rise. Sedgwick on Damages, 155.

4. It is contended, however, that Croghan had only a life estate, and therefore that there could be no recovery for a breach of this contract, because the lessee could have no action against the executor on the *implied* covenant; and, while it is admitted that the law is otherwise on an *express* covenant for quiet enjoyment, (Platt on Covenants, 459,) it is nevertheless asserted that "in this case there is no evidence of any agreement for an express covenant for quiet enjoyment, nor any thing from which such agreement can be fairly inferred." Now, it will be seen, by the written memorandum, that the "*leasehold*" of Barbeau was "to be *renewed* to M'Clowry for a period of five years from and after the 1st of April, 1851," "which said *renewal of said lease* is to be executed or completed and delivered on or before December 1, 1850." M'Clowry's "renewal" was to commence on the 1st of April, 1851, and on that day Barbeau's lease expired. *The renewal of the leasehold* implies that the same obligation, on the part of the lessor, was to be continued for the renewed term. The lease of Barbeau, that was to be renewed, contained a covenant of warranty, and *a covenant of warranty is, in effect, a covenant for quiet enjoyment.* The authorities cited by the district judge, show that here was a right of recovery, since the admitted contract included within its scope an express covenant, which was, in effect, a covenant for quiet enjoyment. And hence a gross error was committed in refusing to enter judgment for the value of the lease, as ascertained by the jury. Upon the express covenant of the lease, the lessor, upon eviction, would have been entitled to the value of the term, less the rent, 4 Selden, 117. And, upon breach of the contract to "*renew*" the lease, the injury being the same, the law affords the same measure of compensation.

At the time the contract was made, M'Clowry was in possession under the original lease; but, on its expiration, he was evicted by Schenley and wife, the heirs-at-law of Croghan, upon whom the title, in remainder, was cast, and who leased the premises to another at an increased rent.

5. Whether Croghan was tenant for life, or in fee, or had no title, would not change his liability upon an *express* contract. And, having contracted to renew the leasehold for a certain term, his breach subjects his estate to liability. The *quantum* of liability being fixed by the value of what he contracted and failed to do, the reason of such failure can, upon no sound principle, diminish the measure of compensation. In no other chattel contract is the measure of compensation influenced by the reason or cause that occasioned the breach.

6. The district judge undertook to strengthen his view of this case by asserting that, " the strong presumption is, that the intestate, for the trifling rent of twenty or twenty-five dollars, would not have agreed to give an express covenant for the quiet enjoyment of premises, worth, according to the evidence, two hundred dollars a year, clear of the rent and taxes. *Now, what Croghan did agree to do was in proof shown by writing; and hence there was no room for any presumption as to what the intestate would or "would not have agreed to give."* Whether the rent was " trifling," or adequate under the conditions of the lease, was for the judgment of the contracting parties, and not for judical judgment. Nor can there be any more dangerous function than for a judge to establish a rule of law upon his own presumption of what might be a good or bad bargain ; for, as was said in *M'Dowell* v. *Oyer,* " the parties know their own business, as nobody else could know it," and no human being but themselves can tell all the inducements that might have entered into their minds in making the contract. But whether the rent reserved were a peppercorn or a thousand dollars, the lessee's right to enjoy the property would have been the same, and the deprivation of that right, occasioning equal injury in either case, entitles him to the same measure of redress.

It is submitted, therefore, that the damages were properly assessed by the jury, that the judge's entry of judgment was erroneous, and that judgment should now be entered upon the verdict for $450, the damages assessed by the jury, as the value of the contract.

*George P. Hamilton,* for defendant in error.

It is an abuse of terms to call the alleged contract between the parties an agreement for the *renewal* of a lease. There had been no previous privity between the parties. The only lease to which Croghan was a party was that from him to Barbeau for a large piece of ground, of which Barbeau subsequently demised a part to Roseburgh, who, in turn, demised a small part thereof to Trainer. It could not have been for a renewal, for the Trainer lease was not between the same parties ; nor for the same premises, or upon the same terms, as the lease to which Croghan was a party. It could only, then, have been an original and independent contract to make a new lease ; and would no more carry with it the covenant for quiet enjoyment than it would the other covenants of Croghan's lease to Barbeau. The statement of the plaintiff, in his argument, that M'Clowry was in possession, and was evicted by Croghan, is not correct, and is directly contradicted by the testimony of his witness, Coyle.

It is not pretended that there was an express covenant for

[M'Clowry v. Croghan's Administrator.]

quiet enjoyment, and the law will not imply one. *Kinney* v. *Watts*, 14 Wend. 48.

The measure of damages, in regard to leases, is the same with that regarding conveyances of land. In *Kinney* v. *Watts*, it was held that " a lease, where no purchase-money is paid by the lessee, does not differ in principle, in this respect, from an ordinary conveyance in fee for a valuable consideration.

And in the case of *Kelly* v. *Dutch Church of Schenectady*, 2 Hill, 105, Bronson, J., said, " The rents reserved in a lease, where no consideration is paid, must be regarded as a just equivalent for the use of the demised premises. The parties have agreed so to consider it. In case of eviction the rent ceases, and the lessee is relieved from a burden which must be deemed equal to the benefit which he could have derived from the continued enjoyment of the property. Having lost nothing, he can recover no damages. He is, however, entitled to the costs he has been put to; and, as he is answerable to the true owner for the mesne profits of the land for a period not exceeding six years, he may recover back the rent he has paid during that time, with the interest thereon. If this rule will not always afford a sufficient indemnity to the lessee, I can only say, as has often been said in relation to a purchase, he should protect himself by requiring other covenants."

The same rule was adopted at an early day in Pennsylvania. *Bender* v. *Fromberger*, 4 Dal. 441.

In *Conwell* v. *Wendell*, 4 Mass. 108, it was held, that where there was no eviction, the measure of damages in the covenant for seisin, was the price paid, and interest.

"The ultimate extent," says Chancellor Kent, vol. 4, p. 476, " of the vendor's responsibility, under any or all of the usual covenants in the deed, is the purchase-money, with interest; and this I presume to be the prevalent rule throughout the United States."

*E. M. Stanton*, in reply.

1. By the assignment of Barbeau, and purchase at the sheriff's sale, M'Clowry became the lessee of the premises, and Croghan's agreement was, that the lease was " *to be renewed from M'Clowry for a period of five years from and after the first day of April*, A. D. 1850," this being the date on which Crogan's lease expired. The sub-lease of Barbeau to Roseburgh described the premises, and Barbeau's lease to Roseburgh contained also a covenant of warranty. By his purchase, M'Clowry became vested with the unexpired term, and was, therefore, by contemplation of law, in possession. The refusal to renew, and the execution of a lease to a third party by Schenly, was a breach of contract, equivalent to eviction. Had the lease been executed by Croghan, an eviction would have been necessary in order to recover on the

covenant, but here, the refusal to execute the lease constitutes the breach of contract, and gives the plaintiff his action.

2. "The covenant of warranty is, in effect, a covenant for quiet enjoyment." 4 Kent's Commentaries, 526, (473.) Lord Kenyon, in *Webb* v. *Russell*, 3 Term Rep. 402; Lord Ellenborough, in *Stevenson* v. *Lanehard*, 2 East's Reports, 580; *Roach* v. *Wadham*, 6 Id. 289; Bayley, J., in *Paul* v. *Nurse*, 8 Barn. & Cress. 486; *Hurd* v. *Curtis*, 19 Pick. 459.

In the case of *Kinney* v. *Watts*, 14 Wend. 38, it was held, that the doctrine of the common law, giving effect to the word *demisi* as an implied covenant, was abrogated by the revised statutes of that State, by which it is enacted, *that no covenant shall be implied in any conveyance of real estate*, whether such conveyance contain special covenants or not; and, therefore, that in an action of *covenant*, the tenant could not recover against his landlord for an ouster as on an *implied* covenant for quiet enjoyment. But it was also held, that, although the language of the statute was "clear, precise, and peremptory," and, therefore, in that action, he could not recover, yet he might have recovered full damages in an action *on the case*. "The appropriate action for the injury complained of by the plaintiff, would have been a special action on the case in which *the question of damages is entirely at large.*"

Although it was intimated in this case, that on a covenant for quiet enjoyment, in a lease only nominal, damages could be recovered, yet it was afterwards thought, in *Mack* v. *Johnson*, 1 Hill, 99, that under a covenant for quiet enjoyment, a lessee might, on eviction, recover *the value of the lease, less the rent reserved;* subsequently, however, in the case of *Kelly* v. *The Dutch Church of Schenectady*, 2 Hill, 105, cited on the other side, Judge Bronson, applying the analogy of the covenants in a conveyance of land to a lease for a term of years, observes: "In case of eviction the rent ceases; and the lessee is relieved from a burden which must be deemed equal to the benefit which he would have derived from the enjoyment of the property. Having lost nothing, he can recover nothing." But this analogy has now been exploded in New York. In the recent case of *Trull* v. *Granger*, 4 Selden, 116, it was held, that, on a contract of lease, the lessee was entitled to recover against the landlord the difference between the rent reserved and the value of the premises during the term. In that case it was ruled, "that upon a contract, leasing lands for a term commencing at a future day, gives the lessee, when the day arrives, the right of possession. And upon such contract, a lessee may maintain, against the lessor, an action for his damages upon the implied agreement of the latter to yield him the possession, or in tort for the violation of the duty arising from the relation of landlord and tenant."

"The measure of damages, whether the action be on contract

[M'Clowry *v.* Croghan's Administrator.]

or in tort, is the same; the difference between the rent reserved and the value of the premises for the term."

Even before *Trull* v. *Granger*, the analogy of Judge Bronson had been condemned, and it was held, that, " a lease for a term of years *is not* to be regarded as a conveyance of land, and the provisions of the statute do not extend to an implied covenant of quiet enjoyment." *Tone* v. *Brace*, 11 Paige's R. 521; 4 Kent, 527, note [1].

That it is at variance with all other analogies in respect to chattels, and contrary to the principles of the *civil* law, and of the *common* law, has been shown by the authorities already cited. Sedgwick on Damages, 155, 169; *Hopkins* v. *Grazebrook*, 13 Eng. C. L. 100.

Following blindly the same analogy, constitutes here the error, if any was committed, by the court below.

3. The rule referred to on the other side, as being established in *Bender* v. *Fromberger*, 4 Dal. 441, is the same that prevails to this day, viz., that on a covenant of seisin in a conveyance of land, the measure of damages is the purchase-money and interest. That this is the prevalent rule in the United States, as stated in 4 Kent, Com. 476, is not doubted, although it is not so in Massachusetts, for there, in the case of *Conwell* v. *Wendell*, 4 Mass. 108, cited on the other side, it was held, that if the grantee be evicted by a superior title, he might, under a covenant of warranty, recover the *value of the land at the time of eviction*, as the proper measure of damages.

4. The state of the question, then, seems to be this:

The court below held, that on a breach of contract to renew a lease, the plaintiff was entitled to recover only nominal damages, or, at most, only what he had paid. This doctrine is sustained by Judge Sutherland, in *Kinney* v. *Watts*, 14 Wend. 48, and by Judge Bronson, in *Kelly* v. *The Dutch Church of Schenectady*, 2 Hill, 105, and *Peters* v. *M'Keon*, 4 Denio, 546. But it was doubted, by Judge Cowan, in *Moak* v. *Johnson*, 1 Hill, 99, and is now overruled in *Trull* v. *Granger*, 4 Seldon, 114. Even as respects the *sale* of land, it is not supported by *Flureau* v. *Thornhill*, 2 Blackstone, 1078, and is controverted in *Hopkins* v. *Grazebrook*, by Chief Justice Abbott, who said, " if it is advanced as a general proposition, that where a vendor cannot make a good title, the purchaser can recover nothing more than nominal damages, I am by no means prepared to assent to it."

By a supposed analogy, an arbitrary rule in relation to covenants in a conveyance of land, is applied to a personal contract in respect to a chattel, and is " against the general principle in regard to chattels." Sedgwick on Damages, 170. It remains for this court to enunciate the proper rule, and it is claimed that upon principle and authority, that rule should be the one now

recognized in new York, and on which the damages here were assessed, viz., the value of the term less the rent recovered.

Opinion.

PER CURIAM.—The District Court entered judgment for the smaller amount named in the verdict, because, among other reasons, the plaintiff could have recovered no more if the lease contracted for had actually been executed, and the lessee had afterwards been evicted by the remainderman, after the death of the tenant for life. The argument of the learned judge is so entirely satisfactory on this point, that we have no occasion to add anything to it. And as it is conclusive of the case, we do not need to view it in any other aspect.

Judgment affirmed.