67 126
31 SC 262

## Meason *versus* Kaine.

1. Meason, Kaine and Cope agreed to buy land, each to be equal owner and to pay one-third; the conveyance to be made to Kaine and Cope. Meason refused to pay his part; Kaine and Cope paid all and sued Meason for his part, declaring in the common counts. *Held*, that an amendment setting out the special contract between the parties was proper.

2. The contract to be proved and its breach were the same whether the suit was to recover the purchase-money or damages for non-payment.

3. The Statute of Frauds intervening to prevent a recovery of the purchase-money, did not affect the right to amend, for the contract and breach were the same; the statute affecting only the measure of damages.

4. Actions to enforce a parol trust forbidden by the Act of April 22d 1856, rest on the same grounds as actions to enforce a parol sale of land.

5. A bargain for a trust is the purchase of an equity, for the payment of the purchase-money would give an equitable title to the land.

6. A suit which compels the payment of the purchase-money converts the holder of the title into a trustee.

7. In the absence of fraud, nothing can be recovered for the loss of a parol bargain, beyond compensation for the actual loss sustained.

8. Where the vendor has not acted in good faith, the vendee can recover also for the loss of his bargain.

9. The doctrine of estoppel rests on a belief induced by one, whereby another has been led to put himself in a position, where it would be a fraud in the former to shift him from it.

10. An express promise which encourages another to assume a new position and thereby incur responsibility and loss, is the highest encouragement.

11. If fraud be found by the jury, the plaintiff would be entitled to recover the difference between the sum advanced for the defendant and the actual value of the land at the time of the breach.

12. When no time for payment is fixed the general rule is a reasonable time; when the parties by mutual forbearance put off the time, the period would be the final demand and refusal.

13. Any loss in the value of the land caused by the negligence and want of care of Kaine and Cope, should be considered in estimating damages.

14. The action to recover for Meason's breach of contract must be joint by Kaine and Cope.

15. The contract being express, the action must follow the nature of the contract.

16. The action having been brought by Kaine alone, may be amended under the Act of May 4th 1852 by adding Cope's name.

November 19th 1870.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1870, No. 188.

The form of action in this case was assumpsit, by Daniel Kaine against Alfred E. Meason; the suit was brought May 4th 1867.

[Meason *v.* Kaine.]

The original declaration was altogether on the common counts. The affidavit of plaintiff's claim was that the defendant owed him $333.33 with interest from April 2d 1866, and $778.44 with interest from April 3d 1867. The case was tried January 21st 1869, and a verdict rendered for plaintiff for $1251.90. The judgment on this verdict was reversed by the Supreme Court (13 P. F. Smith 335).

After the record was returned the plaintiff filed an additional count, which averred that in consideration that the plaintiff and one Eli Cope would purchase a farm of James Shoaf, the defendant agreed, "to and with the plaintiff," that he would become owner of one-third of it and pay one-third of the purchase-money; that the plaintiff and Cope purchased the farm for $12,838.75, and offered the one-third to the defendant, but he refused to take it and pay the one-third of the purchase-money.

The case was again tried March 17th 1870, before Gilmore, P. J. The plaintiff gave in evidence an article of agreement dated December 23d 1864, between Shoaf of the one part and Cope and the plaintiff of the other, by which Shoaf agreed to sell to them a tract of 234 acres of land for $12,838.75. The article was witnessed by the defendant.

Cope testified that the defendant came to him "to go in and buy" the Shoaf farm; Cope said it was too much for him, unless more would go in; Meason went away and returned, saying that the plaintiff would go in; defendant and plaintiff came to witness's house, and the three agreed to buy the farm. The next day they met Shoaf; they agreed about the farm; the defendant wrote the article; the understanding was that defendant's name was not to be used in the article; the purchasers were the plaintiff, defendant and witness, as equal owners; it was thought defendant could act best for the parties in selling the farm if his name was left out; the defendant always said he would pay his share; witness had tried in every way to sell the farm, but could not; the highest offer was $35 per acre.

The plaintiff testified substantially to the same facts. He also testified that by an arrangement with the parties they were all to meet April 1st 1867 to pay Shoaf $4700 on account of the purchase-money and interest; the defendant had assured plaintiff he would then be ready to pay his share; the others met at the time appointed; the defendant did not come, and Cope and plaintiff paid all the money; the understanding was that defendant should sell the land, Cope and plaintiff execute the deed, and the money be divided between the three. The plaintiff then gave evidence of the value of the farm and of some expenses in regard to it by himself and Cope.

The defendant testified, denying that he ever agreed to become a joint purchaser of the farm with the plaintiff and Cope, or to

[Meason *v.* Kaine.]

pay any part of the purchase-money. He gave evidence also that the farm had very much deteriorated through bad management since it was bought, of its value, &c.

The following are points submitted by the defendant, with their answers :—

1. The claim of plaintiff being joint with Eli Cope, there can be no recovery in this action.

Answer : " The amended *narr.* goes for damages' for a non-compliance with an alleged parol contract, by which it is claimed by plaintiff that defendant was co-purchaser with plaintiff and Eli Cope in the purchase of a tract of land from James Shoaf, which parol contract the defendant denies. We are asked to charge you that Cope should have been joined in this action ; we are inclined to believe, and so instruct you, that a separate action can be maintained ; we therefore refuse to charge you as requested. The Supreme Court in this case refused to indicate their opinion on this point ; we are requested to do so ; and, without hearing any argument on this point, none having been offered, we decide as above indicated."

4. Should the jury be of opinion that if Kaine & Cope had properly cared for and farmed the Shoaf farm since it has been in their possession, it would now bring money enough to clear them of loss, plaintiff cannot recover.

Answer : " This has reference to the measure of damages to be assessed in case you should find that Meason did agree by parol to be an equal, or' one-third purchaser in the contract. We charge you that the measure of the damages will be the difference between the price paid or agreed to be paid by plaintiff and Cope, and the market value of the land at this date, and any diminution of value occasioned by the mere wear and tear of the premises under the tenancy, if there is any, could not be taken into account, that is, it should not be charged to the plaintiff, but the market value of the land now, as compared with what has been paid for it, should be the measure of the damages."

7. The cause of action as laid in the amended *narr.*, filed March 15th 1870, is barred by the 6th section of the Act of Assembly of April 22d 1856, relating to trusts, &c. This point was reserved.

8. The measure of damages must be actual outlays by Kaine, or the value of services rendered or labor performed by him in consequence of, or in and about the agreement with Meason, outside of the consideration-money, and that in fixing the damages they must leave out of view the consideration-money as it has no place in this case.

Answer : " Our answer as to the measure is given in the answer to defendant's 4th point, to which we adhere."

The verdict was for the plaintiff for $500.20, with right to the

[Meason *v.* Kaine.]

court to enter judgment on the reserved question for defendant, *non obstante veredicto.*

In delivering his opinion on the reserved question the judge answered the 7th point as follows:—

"By reserving our answer to 7th point of the defendant we showed our willingness to reconsider our order, allowing the amendment to the *narr.* This point involves the whole case, and we have now heard it argued with all the authorities bearing upon the case cited. And after consideration we remain of the same opinion, that we had power to allow the amendment, and upon this amendment the action has now been tried. We hold that the cause of action is substantially the same, the gravamen of the complaint against the defendant is, that he refused to comply with his parol contract with the plaintiff and Eli Cope in the purchase of the tract of land from Shoaf. The *narr.*, as filed in the case when tried, was found to be obnoxious to the provisions of the 4th section of the Act of 22d of April 1856. The action, as then declared upon, was in furtherance and confirmation of the contract, and according to the rulings already made under this act could not be sustained. But the amended *narr.* and new count upon which the action has now been tried demands damages for the violation of his parol agreement in the making and infraction of this contract. This is a familiar cause of action and not within the meaning of the Act of 1856. It is true, it is almost always between vendor and vendee, but we see no reason why it would not hold as good between co-vendees. We therefore say that the root or foundation of the plaintiff's action was the same, to wit, the failure to comply with his parol agreement, he had a right, under our statutes, to have his *narr.* amended, and recover upon a count under which his action will not be barred. It may be observed also that the form of action and the parties continue the same, still it is alleged that the allowance of this amendment would make a misjoinder of counts, and this is put on the ground that the damages are not assessed by the same admeasurement. It is true that the damages are not assessed by the same rule, but if the plaintiff's cause of action is the same, why may he not strike out the obnoxious count or ignore it altogether, as he did in this trial? This matter can all be regulated on trial. It is also objected that the plea would be contradictory, that on the one count the statute bar is five years, and on the other six. We give the same answer to this objection as we have done to the one immediately preceding; and furthermore, there are other ways in which this difficulty could be and ought to be avoided for the purpose of arriving at the substantial justice of the case. It is no objection to the allowance of an amendment that the party defendant could to a new action plead in bar the Statute of Limitations. This we think, in a meritorious action,

17 P. F. Smith—9

[Meason *v.* Kaine.]

would be a reason why the amendment should, if possible, be allowed. We therefore decide the reserved point in favor of the plaintiff, and direct judgment on the verdict in his favor."

The defendant took a writ of error, and assigned for error the answers to his 1st, 4th and 8th points, and entering judgment for the plaintiff on the verdict on the reserved question.

*E. Campbell* and *A. E. Willson*, for plaintiff in error.—The plaintiff alone cannot recover for breach of a contract made jointly with himself and another : Eccleston *v.* Clipsham, 1 Saunders 153, note ; Cabell *v.* Vaughan, Id. 291, note 4 ; Coryton *v.* Lithebye, 2 Id. 115, note 2 ; Saunder's Pl. 169 ; Boggs *v.* Curtin, 10 S. & R. 211 ; Lee *v.* Gibbons, 14 Id. 105 ; Archer *v.* Dunn, 2 W. & S. 327 ; Addison on Contracts 948, 950 ; 1 Chitty on Pl. 6. The want of proper care of the farm by the plaintiff and Cope is to be considered in estimating the damages for the breach of the contract : Hertzog *v.* Hertzog, 10 Casey 418 ; Dumars *v.* Miller, Id. 319 ; Graham *v.* Graham, Id. 475 ; McNair *v.* Compton, 11 Id. 23 ; Bender's Ad'mr. *v.* Bender, 1 Wright 420 ; Tripp *v.* Bishop, 6 P. F. Smith 424 ; Allen's Est., 1 W. & S. 383. Under the 4th section of the Act of April 22d 1856, the action could not be sustained, being based on a parol contract for the sale of land, although the ground of recovery may be changed : Coxe *v.* Tilghman, 1 Whart. 282 ; Beates *v.* Retallick, 11 Harris 288 ; Diehl *v.* McGlue, 2 Rawle 237. If the suit had been brought at the time the amended declaration was filed, it would have been barred by the 6th section of the Act of April 22d 1856 ; filing the amendment should not take it out of the bar of that statute.

*C. E. Boyle* and *W. H. Playford*, for the defendant in error.— This action is in the nature of one for contribution where there must be separate actions : Boggs *v.* Curtin, 10 S. & R. 218 ; McFadden *v.* Hunt, 5 W. & S. 472. This contract is not as between vendor and vendee ; it is on a promise to join in a purchase and for a loss from the failure to keep it. The new count on a special contract was properly allowed : Cunningham *v.* Day, 2 S. & R. 1.

The opinion of the court was delivered, January 16th 1871, by

AGNEW, J.—Eli Cope, Daniel Kaine and Alfred E. Meason met at Mr. Cope's house on an evening in December 1864, and agreed together verbally to buy a farm owned by James Shoaf. Their mutual agreement was that the purchase should be made in the names of Cope and Kaine, in order that Meason might appear to act as their agent, and make a better sale of the land, but (to use Kaine's words) that the farm should be bought for them all, each an equal owner, each to pay one-third, and each to

own one-third. It is for Meason's breach of this contract in refusing to take the one-third of the land and to pay his share of the purchase-money this suit is brought by Kaine. This statement shows the right of the plaintiff to amend his declaration, which was in the common counts, by setting out the special contract and its breach. It is clear the contract to be proved and its breach are the same, whether the plaintiff sues to recover the purchase-money or damages for non-payment. Hence the fact that the Statute of Frauds and Perjuries intervenes to prevent a recovery of the purchase-money, and throws the plaintiff upon a recovery of compensation merely for the breach, does not affect the right to amend; for the contract and breach are the same, and it is the measure of damages only which is affected by the statute. There is express authority for this: Wilson v. Clarke, 1 W. & S. 554. See also Cunningham v. Day, 2 S. & R. 1; Ebersoll v. Krug and Wife, 5 Binn. 51; Coxe v. Tilghman, 1 Whart. 282; Beates v. Retallick, 11 Harris 288. But what is the true measure of damages in such a case? This is the chief question. That it is not the purchase-money or the one-half of it advanced by Kaine was decided in the former writ of error in this case, on the ground that it would conflict with the Act of 22d April 1856, the 4th section of which declares that all declarations of trust or confidence in lands, and all grants and assignments thereof shall be in writing signed by the party holding the title thereof. To sustain the recovery of the purchase-money is to enforce the trust itself; for the payment of it draws the title to the *cestui que trust,* and converts the holder of the title into a trustee for his use, on the ground that equity will not permit him to hold both the title and the money. Nor would the remedy be mutual, for if the holder of the title deny the trust, resting on the statute, the *cestui que trust* could not by a tender enforce the trust. This question was examined and stated with his usual vigor by C. J. Gibson, in Wilson v. Clarke, *supra.* See also Ellet v. Paxson, 2 W. & S. 418, and Irvine v. Bull, 4 Watts 287. Actions to enforce a parol trust forbidden by the Act of 1856, rest upon the same grounds as actions to enforce a parol sale of land, the mischief being the same, to wit, the encouragement given to fraud and perjury. A valid trust is as effectual to give title as a valid sale. A bargain for a trust is the purchase of an equity only by a different name; for the payment of the purchase-money would secure an equitable title to the land. A suit, therefore, which compels the payment of the purchase-money would as effectually convert the holder of the title into a trustee for the *cestui que trust* as a suit for purchase-money on a sale. We held, therefore, when this case was here before, that the purchase-money advanced by Kaine for Meason could not be recovered. To the authorities before cited may be added Hertzog v. Hertzog, 10

Casey 418, overruling Jack *v.* McKee, 9 Barr 235; Dumars *v.* Miller, and Graham *v.* Graham, 10 Casey 319 and 475; McClowry *v.* Croghan, 1 Grant 307; McNair *v.* Compton, 11 Casey 23; Burr *v.* Todd, 5 Wright 213; Bender *v.* Bender, 1 Id. 419; Tripp *v.* Bishop, 6 P. F. Smith 424.

These authorities establish another point, that in the absence of fraud, nothing can be recovered for the loss of a parol bargain, but compensation only for the actual loss sustained, such as the payment of money and expenditures and expenses incurred on the faith of the bargain. The principle, however, is derived from the case of a vendor who sells in good faith and is unable to make a good title. In all such cases the vendee is not permitted to recover for the loss of a good bargain, but is confined to his actual loss in money, labor or service performed on the faith of the contract. But there is another class of cases where the vendor has not acted in good faith, or has been guilty of deception, where the vendee is permitted to recover also for the loss of his bargain: King *v.* Pyle, 8 S. & R. 166; Good *v.* Good, 9 Watts 567; Lee *v.* Dean, 3 Wharton 330; Bitner *v.* Brough, 1 Jones 139. Rogers, J., said in the last case: " But the rule holds good when the vendor acts with good faith; where he is guilty of collusion, tort, artifice and fraud, to escape from the effects of a bad bargain, it is otherwise. In that case the vendee is entitled not only to compensatory damages, but to damages arising from the loss of the bargain, or the money he might have derived from the completion of the contract." This exception is also recognised by Justice Woodward in Hertzog *v.* Hertzog, 10 Casey 428, and in McNair *v.* Compton, 11 Casey 23; and by Strong, J., in Hoy *v.* Gronoble, 10 Casey 11.

In the present case there was evidence to go to the jury of bad faith on part of Meason. If the testimony of Cope and Kaine be believed, Meason made the first proposition to buy the land, agreed to go in with them in its purchase, and to pay one-third of the price, and by their mutual agreement his name was left out of the contract to enable him to act seemingly as their agent and make a better sale for their joint benefit. If this be true, it is evident they were led to take an important step on his pledge of faith, and to incur a heavy responsibility for him at his request; whereby they have been seriously injured by his refusal to fulfil his pledge. Now this is the very principle on which the doctrine of estoppel rests; a belief, induced by another, whereby the former has been led to place himself in a position where it would be a fraud in the latter to shift him from it: Commonwealth *v.* Moltz, 10 Barr 530, " Where (says Judge Bell) an act is done or a statement made by a party, the truth or efficiency of which it would be *a fraud* on his part to controvert or impair." Ibid. Thus in Nass *v.* Van Swearingen, 10 S. & R. 146, it was declared that a party

[Meason v. Kaine.]

who stands by at the sale of his property, though under a void
authority, and *encourages* purchasers to bid, is guilty of direct
fraud.  In like manner, one who encourages another to settle on
land and expend money and labor on it, will not be permitted.
to assert a better title to it: Miller v. Miller, 10 P. F. Smith 16.
Now clearly an express promise, which encourages another to
assume a new position and thereby incur responsibility and loss,
is the highest encouragement.  It is more potent than silence,
when one should speak out, or acts which mislead.  The fact that
the Statute of Frauds prevents a specific performance only heightens
the breach of faith and intensifies the fraud.  The case is there-
fore not one of a mere refusal to perform a bargain where the op-
posite party has not changed his position, but Cope and Kaine here
took upon themselves a heavy responsibility for Meason at his
request, and have suffered heavily for it.  He should therefore
make good the actual loss.  But it is supposed this would be to
adopt the doctrine of the value of the land as the measure of
damages, which was overthrown in Hertzog v. Hertzog, *supra.*
This is not correct.  Fraud or bad faith in the bargain is an ad-
mitted exception, as may be seen on pages 420 and 428.  And see
Dumars v. Miller, 10 Casey 322, 323; McNair v. Compton, 11
Casey 23; Hoy v. Gronoble, 10 Casey 9.  There is good reason
for the exception, for a statute passed to prevent frauds should
not be made itself the means of perpetrating a fraud.  The con-
tract not being forbidden by the statute, is not to be treated so as to
screen a fraudulent party from the just effect of his conduct.  The
statute merely forbids the passing of the title by parol, and the
true principle in giving it effect, is, never to make the value of
the land the measure of damages, when the consequence of such
a measure would be to convert the owner by parol or the holder
of the title into a trustee of it for the vendee or alleged *cestui*
*que trust*, or where it would compel the holder of the title to pass
it over rather than to suffer the consequences.  But it is clear, no
such effect follows a recovery of the actual loss caused by a
refusal to perform the contract against a vendor who by his fraud
has brought the loss on himself.  In paying the difference between
the contract price and the actual market value of the land, he
pays only the real loss incurred by reason of his fraud, while his
title is not disturbed but remains in him.  It is not correct to
say this is a return to the exploded doctrine of Jack and McKee,
because the difference being added to the contract price is equal
to the whole value of the land.  There is a confusion in this
proposition.  The sum in *dollars* is numerically equal, but the
elements are different.  When a vendee having *actually paid the*
*price*, recovers it back, he does not recover the value of the land,
but his own money only.  The *difference* between the contract
price and the market value of the land does represent so much of

the value of the land, but the vendor retaining the land holds the residue of the market value in his own hands. The vendor holds both land and money in such a case; and of course must return the price paid, for it is the money of the vendee so long as the vendor holds the land, and the vendee therefore gets back only his own money, and recovers the difference representing the loss he has suffered, leaving the land still in the hands of the vendor. The confusion is in substituting the money paid by the vendee for so much of the market value of the land; while the vendee recovers no part of the value of the land retained by the vendor, except so much of it as represents his loss. The question of fraud is one for the jury, but if found, the plaintiff in this case would be entitled to recover the difference between the sum advanced for the defendant and the actual market value of one-third of the land at the time of the breach of the contract.

But the learned judge charged that the loss was to be measured by the market value of the land *at the time of the trial*. This was an error. It is said, he took this rule from our former opinion in this case, where it was said, the measure would be the difference between the price Meason had agreed to pay and the *present* market value of one-third of the land. This was a misconception of the language used by our Brother who wrote the opinion. The subject of discussion there was the right of the plaintiff to recover the *purchase-money* under a parol contract for a trust in the face of the Act of 1856. The present market value was merely a general expression denoting the later or proximate period as distinguished from the time of the contract, and did not refer to the time of trial.

Farther on in the opinion, and still discussing the effect of the Act of 1856, it is said the measure is " the difference between the price agreed and the actual market value of his one-third of the land;" showing that it was the measure and not the time when it should be applied, which was in the mind of the writer of the opinion. The true period when the measure is to be applied is the time of the final breach of the contract. This always depends on the terms of the contract, in some the time of performance being fixed and in others not fixed. In the present case it does not seem that any time was specified, and the parties continued making efforts to sell, Meason remaining in service until it was found the land could not be sold, and finally refusing to fulfil his agreement about the 1st of April 1867, according to some of the testimony. Where no time is fixed for payment, the general rule is to allow a reasonable time, but when the parties by mutual forbearance put off the time, the period would be when the final demand was made and the refusal to comply. But the rule laid down by the court below would place the defendant too much in the power of the plaintiff, who might purposely delay his

suit in order to augment his damages.  This might bring ruin on the defendant.  Such a rule is condemned in Ashcom v. Smith, 2 Penna. 211, and in Shreve v. Brenton, 1 P. F. Smith 178, 185. This question may be well summed up in the language of Justice Kennedy, in Ellett v. Paxson, 2 W. & S. 433, where he says, "But as a recovery of the purchase-money would have been in effect an enforcement of a specific performance of the contract, the learned judge before whom the trial was had, very properly ruled that as the contract declared on was verbal, and therefore within the provisions of the act against frauds and perjuries, the plaintiffs at most were only entitled to recover damages equal to the loss actually sustained by the non-fulfilment of the contract; which, in this case, would appear from the evidence to be the difference between the value of the property at the time the defendants refused to fulfil the contract, and the sum agreed to be paid as the price of it."

We think it was an. error also to omit to give the instruction asked for, that any loss in the value of the property caused by the want of care and the negligence of Cope and Kaine to keep it in a proper and ordinary state of preservation, should be excluded from the damages.  So far as their own negligence or misconduct actually contributed to the depreciation in the price, they certainly ought not to be permitted to recover.

The last question relates to the non-joinder of Cope in this suit. The statement of the contract already given, shows that this was a mutual agreement, by which each party bound himself to both the others.  It had a common object and a united purpose, to wit, the purchase and sale of the farm.  The breach also is common to both of the other parties, and it is evident the loss is joint. If an examination of title and encumbrances be made, or a survey to ascertain quantity, or deeds prepared, or other expenses incurred to complete the contract, it is obvious the liability to pay for them is common to all.  So the loss by depreciation or loss of profit equally affects both.  Indeed, there is no ground of severance in such a contract.  If one pays more of a certain expense than the other, or of the purchase-money, it is the subject of adjustment between themselves, but the contract being single on part of the defendant, his breach of it is single, and the injury common to the other two.  There might be a dozen members in such a purchase, and consequently as many suits would follow the single breach of refusing to pay the sum to which the defendant bound himself.  This is contrary to justice and the policy which forbids a multiplicity of suits.  The case is one of express contract—not implied—and the remedy therefore follows the nature of the contract and is joint: Boggs v. Curtin, 10 S. & R. 213; Lee v. Gibbons, 14 S. & R. 111; Archer v. Dunn, 2 W. & S. 360. It is not like a contract implied from a payment of money at

[Meason *v.* Kaine.]

request when the payment is the meritorious cause of action, and the money itself the subject of the suit. Nor is it like an action by a tenant in common upon his title, or upon a consideration growing out of his separate estate. In short, it arises upon no contract which the law itself raises from the circumstances, by reason of a consideration received or by reason of an independent relation of the party; but arises upon the direct agreement by one to the other two, to take the property and pay for it, which not being done, the action necessarily follows the form of the contract and the parties with whom it was made. Cope and Kaine ought therefore to have joined in the action. But the non-joinder is amendable under the Act of 4th May 1852, Purdon 47, pl. 3; Rangler *v.* Hummel, 1 Wright 130; Hite *v.* Kier, 2 Wright 72. Cope's name may therefore be added to the record.

Judgment reversed, and a *venire facias de novo* awarded.