## McCafferty *versus* Griswold.

1. In an action to recover damages for the breach of a parol contract to lease or sell land, the measure of damages is the money paid or expenses incurred on the faith of the contract ; if no money has been paid or expense incurred the damages are merely nominal.

2. A., being the owner of a farm in the oil regions, agreed, verbally, to lease ten acres thereof to B. for twenty years, in order that the latter, a practical driller, might test the same for oil.   B. entered upon the land and began the drilling of an oil well.   Subsequently, upon coming to execute the lease, B. discovered that it had been prepared by A.'s instructions for five acres instead of ten.   He at first declined to accept it.   A., however, stated that he preferred to sign a lease first for the five acres upon which the well had been begun, and that if that well paid he would execute a lease for the other five acres.   B. consented to this arrangement, and executed and accepted the lease.   He then proceeded with his well, expended about $10,000 thereon, and finally struck oil in paying quantities.   He then demanded from A. a lease of the other five acres, which was refused.   Subsequently B. sold his interest in the five-acre lot on which the well he had sunk was situate, for $18,000.   In an action by B. against A. to recover damages for the breach of his parol contract to lease the other five acres, the court instructed the jury that plaintiff was entitled to recover as his damages one-half the expense of sinking the well on the tract actually leased to him with interest from the time of the breach. *Held*, that this was error.   Plaintiff had incurred no expense on account of the land as to which the breach had taken place, other than that involved in sinking the well on the first tract, which sinking he had effected upon the faith that, on its successful completion, the defendant would lease to him the land in question.   This expense, however, had been paid and overpaid by the profit which plaintiff realized from the sale of his interest in the tract whereon said well was sunk.   He was, therefore, entitled to recover nominal damages only.

November 24th 1881.   Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   MERCUR, J., absent.

Error to the Court of Common Pleas of *Mercer county :* Of October and November Term 1881, No. 45.   ·

Assumpsit by Orr Griswold, et al., against William McCafferty, to recover damages for the breach of an alleged parol agreement, whereby defendant agreed to lease to the plaintiffs for the term of twenty years a tract of land for the purpose of drilling oil wells thereon. Pleas, non assumpsit, payment with leave. The

[McCafferty v. Griswold.]

defendant, William McCafferty, died before trial, and his administrator, Howard McCafferty, was substituted.

On the trial before McDermitt, P. J., the evidence on behalf of the plaintiff was to the following effect:

In 1872 William McCafferty, who owned a farm in Butler county containing three hundred acres, entered into negotiation with the plaintiffs, who were practical drillers, with the view of testing a portion of his land for oil. He at first proposed to give them a lease of five acres on certain conditions. The plaintiffs declined to take a lease of less than ten acres. After some negotiation, the parties agreed verbally that the lease should be for a square ten acres of land out of the south-east corner of McCafferty's farm, for the term of twenty years, the lessee to bore for oil, and prosecute the work to success or abandonment, and in case of success, the lessor to be entitled to a royalty of one-fourth (afterwards reduced to one-sixth) of the oil obtained; and in case any well should produce more than forty barrels per day, the lessees should pay, in addition, to the lessor the sum of $200 per acre. The plaintiffs immediately took possession, built a rig, etc., at a cost of about $600, and commenced drilling. On August 31st 1872, after the commencement of the work, the parties met at the office of M. S. Ray, a justice of the peace, to execute the lease. A lease was produced, which had been prepared by Justice Ray under the instructions of McCafferty, for five acres of land instead of ten. The plaintiffs at first refused to accept this lease. McCafferty stated that he would prefer to sign first a written lease for the five acres on which the well was begun, and if that well should prove to be a paying one, he would then give a written lease for the other five acres. Griswold objected at first, but afterwards consented to the proposed arrangement, and the lease for the five acres was duly executed.

Griswold then proceeded with the work, and after ten months' labor and an expenditure of $10,000, the well produced oil at the rate of 170 barrels per day. Within a few days after its completion, Griswold demanded from McCafferty a written lease for the other five acres, which he refused to give; and for the breach of this alleged verbal agreement, Griswold brought this suit. It appeared that the plantiffs had sold their interest in the well and five-acre lease for the sum of $18,000; also, that McCafferty, within a month after the completion of the well, had sold his farm for $90,000, and that two wells, producing each about 250 barrels a day, were afterwards sunk on the five acres which were the subject of the alleged parol agreement.

The plaintiffs averred that the labor and cost which they expended in putting down the said well, were so expended in

[McCafferty *v.* Griswold.]

consideration of the parol agreement to lease the additional five acres, as well as in consideration of the written lease.

The defendant claimed that all the prior negotiations were merged in the written lease for five acres, and denied the alleged contemporaneous verbal contract, and that the plaintiffs had expended any money or labor on the faith thereof.

The plaintiffs presented the following points :—1. " If the jury find from the evidence that McCafferty agreed to lease to the plaintiffs a square of ten acres of land, out of the south-east corner of his farm, for the consideration of the plaintiffs' putting down the test well on said farm, the lease for five acres of said land to be executed before the well was put down, and the lease for the other five acres to be executed after the well was down, as testified to by plaintiffs, then the plaintiffs are entitled to recover, for the breach of the McCafferty agreement to execute the second five-acre lease, one-half of what it cost them to put down said well, with interest from the time of breach."

*Answer.* " The general law of this point is affirmed, and as we know of no more equitable rule for the measure of damages then as herein stated, the point is affirmed generally."

2. " That if the original parol contract for ten acres, as testified to by plaintiff, was not changed or modified at the time the written lease for five acres was made (except as shown by the evidence of Orr Griswold), then the execution of said written lease would not prevent plaintiffs' recovery in this suit."

*Answer.* " Affirmed ; but what the original parol contract was is for you."

The defendant presented the following points :—" 1. That all the conversations and negotiations between the parties prior to the execution of the written contract are merged in such written contract, and that the law presumes such written contract to be the consummation of the previous negotiations, and to be the actual agreement of the parties."

" Answered affirmatively, but this is a presumption of law which may be overthrown by parol proof of what occurred between the parties when they executed their written agreement."

" 2. That if the jury believe from the evidence that the plaintiffs accepted the written contract of August 31st 1872, and in pursuance of said contract went on and expended their time and money in putting down the well on said lease, then all the labor and expenditure so made on said lease would be referable to said written lease or contract, and none of the same could be referred to their verbal contract."

*Answer.* " If the weight of the evidence shows you that the plaintiffs accepted the written lease or contract in evidence, and in pursuance of it and solely upon the faith of it expended

[*McCafferty v. Griswold.*]

their money in putting down the well, then this point is affirmed; but if you find as a fact from the evidence that the plaintiff refused to accept the five-acre lease as a consideration for sinking the well, and that the agreement between the parties, entered into at the same time the five-acre lease was executed, was that they should receive a written lease for the other five acres as soon as a paying well was struck, and if the plaintiffs expended their money on the faith of such agreement that they were to receive a lease for the other five acres, then this point is refused."

"3. That if the jury believe from the testimony of the plaintiffs that one of the conditions of their getting the additional five-acre lease was, that they should get a paying well on the five acres for which they had a written contract, then all the time and money so expended was expended on and under said written contract in putting down the well, the quality of which, when finished, was a condition precedent to any additional lease, then none of the expenditures so made could be referred to the promise of an additional lease."

*Answer.* "If you find, the contract was that plaintiffs should put the well down under the lease executed for the five acres alone, this point is affirmed; but, if the contract was, that they were to receive a lease of the ten acres therefor, and if the plaintiffs expended their money on the faith of so receiving a lease for the other five acres in addition when a paying well was struck, then this point is refused."

"4. That from all the evidence in the case the plaintiffs have not shown, that they have paid any money to the defendant, or made any expenditures of more time and labor exclusively upon the faith of the verbal lease for five acres in addition to the five acres in the written lease, and therefore they cannot recover."

*Answer.* "Whether they have or not is a question of fact for the jury under all the evidence. Thus answered, this point is refused."

Verdict for the plaintiffs for $4,345.50, and judgment thereon. The defendant took this writ of error, assigning for error, inter alia, the answers to plaintiffs' and defendant's points as above.

*Griffith & Sons* and *William Maxwell*, for the plaintiff in error.—Although an action will lie for a breach of a parol contract to lease for more than three years, the rule as to the measure of damages recoverable, as now well settled in Pennsylvania, is that in the absence of fraud only such damages as result directly from the breach can be recovered—nothing for the loss of the bargain: *Sausser v. Steinmetz*, 8 W.

3 OUTERBRIDGE.—18

N. C. 100 ; Thompson *v.* Sheplar, 22 P. F. Smith 160 ; Harris *v.* Harris, 20 P. F. Smith 170 ; Dumars *v.* Miller, 10 Casey 319. The former doctrine, as held in Jack *v.* McKee, 9 Barr 235, was distinctly overruled in Hertzog *v.* Hertzog, 10 Casey 418, which has been followed in all the subsequent cases. The evidence in this case was insufficient to establish the alleged parol contract : Frederick *v.* Campbell, 13 S. & R 136 ; Poorman *v.* Kilgore, 1 Wright 309 : or, that the plaintiffs performed any labor or expended any money exclusively on the faith of their alleged parol contract. What they did expend was necessary under the written lease, and is referable solely to that. The plaintiffs suffered no damage on the whole transaction ; but, on the contrary, made a clear profit of $8,000. The court, therefore, erred in its answers to the points with respect to the measure of damages.

*Q. A. Gordon* (*S. H. Miller* with him), for the defendants in error.—We do not claim that we can recover for the " loss of our bargain." We do claim, however, that the labor and money expended by us on the test well, was so expended equally on the faith of the parol contract to lease an additional five acres, as on the written lease. This was shown by the facts that we refused McCafferty's first offer of five acres, and upon his acceding to our proposition for a lease of ten acres, we began work and expended several hundred dollars on the faith of that parol contract for ten acres before the production by McCafferty of the written lease for five acres. This was a surprise to us, and we only accepted it, at his request, on the faith of his contemporaneous agreement that he would sign the lease for the other five acres upon a successful completion of the well. The written lease for a part, and the parol agreement that accompanied it and upon the faith of which it was accepted, effected no change in the original contract, except that the time for signing the lease of one-half the land was postponed until the completion of the well already begun on the other half. The consideration for the whole was the sinking of one test well. By accomplishing this, we have paid the consideration for the whole ; but have received only one-half. Why then can we not recover back the consideration we paid in advance for the second half, viz., the amount we spent on the faith of McCafferty's promise to give it ? The court below in their instruction to the jury equitably measured this amount as one-half of what we expended on the well, although the jury did not give us so much. If McCafferty had agreed, in consideration of our sinking the test well, to sell us ten acres, the deed for five acres to be made on commencement of the work and the deed for the other five acres to be made on its completion, he could not, after its completion, have refused

with impunity to execute the second deed. There is no difference, in principle, between a sale and a lease. The fact, that we sold our five-acre lease for more than we spent upon it, is immaterial. Our right to recover, in this action, is the same as if we had sold it for less or had retained it.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1882.

This was an action on the the case brought by the Griswolds, the plaintiffs below, against the administrator of William McCafferty's estate, to recover damages for the breach of a parol agreement, or rather promise, by William McCafferty, in his lifetime, to execute to the plaintiffs a twenty years lease for five acres of land in the county of Butler. On the 31st of August 1872 McCafferty made a written lease to the plaintiffs for five acres of land for the term of twenty years, in consideration of which the plaintiffs agreed to enter upon the land immediately and bore for oil, and, if they were successful, render to McCafferty one-sixth of the oil which might be produced. They were also to pay him one hundred dollars an acre for the land, if for ten successive days the well yielded twenty-five barrels of oil a day, and two hundred dollars an acre if the yield was forty barrels or over.

The plaintiffs entered upon the property and diligently prosecuted their work at a cost of ten thousand dollars, and at a depth of fourteen hundred feet they found oil in quantity sufficient to produce one hundred and seventy barrels a day. Afterwards they sold this lease for the sum of eighteen thousand dollars. Now, according to the testimony of the plaintiffs, McCafferty had, previously to the time of the execution of the lease above mentioned, promised orally that it should cover ten acres. It was further proved, that these plaintiffs refused to execute this paper or to proceed with the work except on the promise then made by McCafferty that he would afterwards lease to them the additional five acres.

This, then, is a brief outline of the facts as found by the jury, and which, though denied by the defendants, we must take as true. For a breach of this promise to lease this action is brought. The court instructed the jury, that if they found the facts as above stated, the plaintiffs were entitled to recover, and that they might adopt, as a proper measure of damages, half of the cost of the well put down on the five-acre lease. The defendant complains of this instruction as improper and illegal, and we think his complaint must be sustained.

The case is one covered by the statute of frauds and perjuries. The promise was for a lease of more than three years, and hence, under the statute, it cannot be sustained. Neverthe-

[McCafferty *v.* Griswold.]

less, an action for the breach of this parol agreement was well brought; but, what should be the measure of damage? Not the difference between the price to be paid and the actual value of the lease, in other words, the value of the bargain. For since the case of Hertzog *v.* Hertzog, 10 Casey 418, which overruled Jack *v.* McKee, 9 Barr 235, and the cases which followed it, no such rule can be applied. On the other hand, we have in Thompson *v.* Sheplar, 22 P. F. Smith 160, and Sausser *v.* Steinmetz, 8 W. N. C. 100, this rule stated as the proper measure of damages for the breach of parol leases and sales of lands; that is to say, the money paid and the expenses incurred on the faith of the contract; but, if no money has been paid or expenses incurred, the damages are nominal.

In the case in hand there was no money paid, neither was there any expense incurred, on account of the land proposed to be leased. But, it is urged that without this promise the plaintiffs would not have put down the well upon the five-acre lease. Let this be admitted; what then? They would have lost, according to their own showing, a bargain of eight thousand dollars. What kind of damages are these: they put down a well at a cost of ten thousand dollars for which they got eighteen thousand? What nonsense to talk about damages for the breach of an oral contract, which led to such a result as this! But let us suppose the well to have been put down on the faith of a parol lease, and the result had as above stated; on a breach of the contract by entry of the landlord and ouster of the tenants, what would be the damages recoverable by the lessees? Nothing save the expenses they had incurred in the prosecution of the work; but, as these are paid and overpaid from the land itself, they can get nothing more, for they have suffered no loss. There seems, indeed, to be a constant disposition on the part of courts to revert to the exploded doctrine of Jack *v.* McKee; to impinge upon the statute in giving to the plaintiff some compensation for the loss of a good bargain. But this must not be allowed. Injury enough has resulted from that doctrine to demonstrate the wisdom of a strict adherence to the statute, and, it is to be hoped, that the ruling of Jack *v.* McKee will never again find a place in the jurisprudence of Pennsylvania. Manifestly, here is an attempt to get back upon the forbidden ground; an attempt to compensate the plaintiffs, at least in part, for the loss of a good bargain; otherwise, how could the court have permitted the plaintiffs to recover when they had suffered no loss?

But we cannot thus permit the force and vitality of a valuable statute to be frittered away, and that upon equities and hardships which are purely factitious. The plaintiffs have suffered neither loss nor wrong. They not only made money by

[McCafferty *v.* Griswold.]

their contract, but, as to the parol agreement, they knew it was binding on neither party. Had their operation on the lease proved a failure, McCafferty certainly could not have compelled them to sink a well on the other lot, neither could he have recovered damages for their refusal so to do.

There being thus a total want of mutuality in the alleged contract, and the plaintiffs having suffered no pecuniary loss, they had no standing, either in law or equity, to recover any but nominal damages.

The judgment is reversed, and a venire facias de novo is ordered.