## Allison *versus* Montgomery.

1. Where, in an action to recover damages for the breach of an alleged parol contract for the conveyance of land, it appears from plaintiff's testimony that he has possession of the land, in which he has not been disturbed by the defendant; and that he has never made a demand on the defendant for a conveyance; it is not error for the court below to direct a verdict for the defendant. It is immaterial that the defendant testified that he never intended to execute a deed even if it were demanded giving as a reason, that he never entered into the alleged contract.

2. It is not enough that the contract is within the statute of frauds and that by reason thereof either party may rescind at pleasure; there must be an actual rescission, a breach, or no action will lie.

3. Where there has been an actual breach of such a contract, the damages must be confined to the purchase money paid, or the expenses actually incurred in consequence of the contract. The vendor is not bound to compensate the vendee for the loss of a bargain.

4. An action for damages will not lie for the value of personal property, left in charge of a person as bailee, unless the plaintiff shows a demand for the possession of the same.

October 28th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:* Of October and November Term, 1884, No. 58.

Assumpsit, by James G. Allison against Thomas Montgomery to recover the price of a mowing machine and thirty-five bushels of wheat; also damages alleged to have resulted from the breach of a parol gift of land, by defendant, to plaintiff and wife.

On the trial, before KIRKPATRICK, J., it appeared from the testimony of the plaintiff, who was defendant's son-in-law, that he went upon the defendant's property to farm it for one half the crops, and, with his wife lived with the defendant in the latter's house. About a month afterwards, the defendant

offered to erect a small house for the plaintiff; but the latter, being dissatisfied with the character and size of the proposed dwelling, it was orally agreed between the parties that the plaintiff should put up a house and out-buildings to suit himself, on a twelve acre lot which defendant had recently bought and attached to his farm.

It was further claimed by plaintiff, that in order to induce him to build, the defendant promised to execute to him and his wife, a deed for the twelve acre lot. Plaintiff's testimony as to this was, inter alia, as follows : "After I was married he (the defendant) talked about building a small house, and he said if he would put that house up, in the course of a year or so it would be no use to me or any other person, for he would tear it down, and he talked on and said, if there's a house built on these twelve acres, I will deed it to you and your wife. He said : 'You go to work and build that house,' and I did it under his instructions, building it where he told me. He also said : 'all improvements you make you make them there, and you have them of your own, while if I build this house all the improvements you make will never do you any good.' These were the instructions on which I went to work at the house."

The contractor who built the house also testified that Montgomery told him that "he would make them a deed" for the twelve acres when the house was completed.

Plaintiff accordingly had the house and a stable built by a contractor, dug a well and put a paling fence around the house. He then moved into the house, with his family, and continued to live there for about three years when he stopped farming and removed to Allegheny city. Before moving he sold all his personal property except a mowing machine and some standing wheat. He afterwards helped to harvest the wheat and he left his share, about fifty bushels, with the mowing machine, in charge of the defendant. Fifteen bushels of wheat were afterwards obtained by him, but the remaining thirty-five bushels and the machine, as alleged by him, still remained in possession of the defendant, and were appropriated by him.

It did not appear from plaintiff's testimony that he had ever asked defendant for the machine or the wheat, or to execute the deed for the lot. He testified in reference to the latter, however, that :

"He (defendant) would not allow me to go at all, near the premises. We had no talk concerning just the twelve acres or my going on it, at all. I gave him authority to rent the house. He asked me what the house would rent for and he rented it under my instructions."

[Allison v. Montgomery.]

Montgomery, the defendant, also testified as follows:

"Q. Did any person go to you on behalf of Mr. Allison and state that they had come to settle the matter with you in regard to this house and land?

A. Yes, sir.

Q. Who was it, Mr. Montgomery?

A. It was you.

Q. When was it?

A. I couldn't tell you, it was this last winter.

Q. Did you not say to me that you never had agreed to give any of your land to Mr. Allison, and that you wouldn't do it for him or his wife, or anybody?

A. I told you, sir, that I owed Mr. Allison nothing, and I had nothing to settle with you.

Q. Did you not say, sir, that you never had agreed to give away any of your land to Mr. Allison and his wife.

A. I have often said so, that I ——

Q. But you did say that he had no claim upon the land?

A. Yes, sir; never had and has not yet."

"Q. Now do you say that you never agreed or said to Mr. Allison that if he built that house and put up those improvements they would be his own, and that you would give them a deed for the land?

A. No, sir; I never said that that would be his or anything belonging to me."

Plaintiff asked the court to charge:

"1. That if the jury believe from the evidence, there was a contract made between the plaintiff and defendant, by which the defendant, in consideration of the plaintiff building with his own money a house, and making other improvements on a portion of defendant's farm, comprising about twelve acres, that the defendant would give to plaintiff and his wife a deed therefor, and the plaintiff accepted said proposition and with the advice, consent, knowledge and assistance of defendant, built a house on said portion of defendant's farm, and made other improvements thereon, to wit: Building a stable, a paling fence, sinking a well, etc., and paid therefor with his own money, and that defendant has refused to comply with his agreement, and to give plaintiff and his wife said deed, after the completion of said improvements, then plaintiff is entitled to recover the cost of making the improvements, with the interest thereon.    Refused.

2. That if the jury believe from the evidence, such an agreement as set out in the first point was made between the plaintiff and defendant, and that plaintiff took possession and complied with the contract on his part by making valuable improvements, and expended money for insurance, taxes, etc.;

[Allison *v.* Montgomery.]

and that defendant violated his part of the contract by refusing, after said improvements were made, to give plaintiff and his wife a deed for said land, then the plaintiff is entitled to recover damages. Refused.

3. That the measure of damages in this action is compensation for all that the plaintiff did in pursuance of the contract, and in satisfaction of his part thereof; and for all permanent improvements made upon the land, in reliance upon the contract with the knowledge of the defendant, and which the defendant gets the benefit of by taking back the land." Refused.

The defendant submitted, inter alia, the following point: " That upon the pleadings and evidence in the case, the plaintiff is not entitled to recover."

" Affirmed."

Verdict for the defendant and judgment thereon ; whereupon the plaintiff took this writ assigning for error the answers to points, as above.

*McMullen* (with whom was *Myler*), for plaintiff in error.— An action at law will lie, by the grantee, for breach of a parol contract to convey land, the consideration being the making of improvements thereon : Bender's Adm'rs *v.* Bender, 1 Wr. 420 ; Poorman *v.* Kilgore, Id. 309 ; Bell *v.* Andrews, 4 Dal. 152 ; George *v.* Bartoner, 7 W. 530 ; Meason *v.* Kaine, 63 Pa. St. R. 339 ; Harris *v.* Harris, 70 Id. 174 ; Ewing *v.* Tees, 1 Bin. 450. The evidence was sufficiently specific to go to the jury : Poorman *v.* Kilgore, 1 Wright 311.

*A. M. Brown*, for defendant in error.—Aside from the fact that there was no sufficient evidence of a promise to convey the land, the plaintiff's case must fail, because his testimony shows, that there was neither a rescission nor an eviction ; and that a deed for the land was neither asked for nor refused. At the very time when this suit was brought, the property was in the possession of plaintiff's tenant, Salters, and plaintiff or his wife had received the rent. As to the wheat and the mowing machine, the plaintiff claimed to recover against defendant upon the ground of a wrongful conversion of the property, yet the testimony shows very clearly that Allison left the property at Montgomery's against the latter's wishes, and failed to remove it, although requested so to do ; that no demand for it, or conversion of it, ever occurred, and that the suit was to recover in money more than its value.

Mr. Justice GORDON delivered the opinion of the court, November 10th, 1884.

[Allison v. Montgomery.]

This was an action of assumpsit brought by the plaintiff, James G. Allison, against Thomas Montgomery, for the recovery of the price of a mowing machine, some fifteen bushels of wheat, and also for damages alleged to have resulted to the plaintiff, from the breach, by the defendant, of a parol gift of a lot of land. On the trial of the case, after hearing the evidence produced on part of the plaintiff, the court below held, that it was not sufficient to sustain the action, and directed a verdict for the defendant. In this, notwithstanding the able argument of the counsel for the plaintiff in error, we have not been convinced that a mistake was made by the learned judge who presided at the trial in the Common Pleas. It seems from the testimony, that the plaintiff, a son-in-law of the defendant, went upon the farm, and into the house of his father-in-law, as a cropper. After he had been there for a month or two, the fact appears to have been mutually recognized that the farm house was not large enough for the two families. To meet this difficulty, Montgomery proposed to erect a small house for the use of Allison; he, however, not being satisfied with the size or character of the building which his father-in-law proposed to erect, it was orally agreed between them that the plaintiff should himself put up such a house and out-buildings as might accord with his own views, on a twelve acre lot which Montgomery had recently bought and attached to his farm. The proposed erections were accordingly made by Allison at a cost of some seven or eight hundred dollars.

It also appears, on part of the plaintiff, that as an inducement to make the improvements, as above stated, the defendant had previously promised to execute a deed for this twelve acre lot to the plaintiff and his wife, though at what particular time this was to be done does not very definitely appear. As soon as the house was finished the plaintiff moved into it, and continued its occupancy uninterruptedly until he concluded to change his residence to the city of Allegheny. He then left the premises in charge of the defendant with authority to rent them, which, as he himself says, was done under his direction. Taking Allison's testimony for verity, and his possession of the property was never interfered with or disputed by the defendant, whilst, so far as the deed for it was concerned, it seems never to have entered into the plaintiff's head to make a demand for it. The only thing that even looks like a denial of his right of possession is found in his own evidence, where he says, that in a talk which he had with his father-in-law in the city of Allegheny, he refused to allow him to go to the lot at all, but in this he immediately contradicts himself by saying: " He would not allow me to go at all near his prem-

ises.  We had no talk concerning just the twelve acres, or my going on it at all.  I gave him authority to rent the house; he asked me what the house would rent for, and he rented it under my instructions."  Now, we agree that, notwithstanding the statute of frauds and perjuries, an action will lie in favor of a grantee for a breach of a parol contract for the sale of land, though since the overruling of the case of Jack *v.* McKee, 9 Barr 235, and its consequents, by Dumars *v.* Miller, 10 Ca. 319, the damages which may be recovered in such action are to be confined to the purchase money that may have been paid, or the expenses actually incurred in consequence of the contract.  The vendor must restore the vendee to the condition in which he found him, but he is not bound to compensate him for the loss of a bargain.  But in order to recover at all it must be shown affirmatively that the defendant has refused to comply with his part of the agreement.  It is not enough that the contract is within the statute, and that by reason thereof either party may rescind at pleasure; there must be an actual rescission, an actual breach, or no action will lie.  A parol contract for the sale of land is neither illegal nor *per se* void, but voidable only, hence, if the vendor does nothing by way of repudiation he cannot be visited with damages.  But in the case in hand, we have as yet not discovered that Montgomery has been convicted of a violation of his agreement with his son-in-law.  He has neither evicted him from the premises on which the house was built, nor refused to execute a deed; in other words, there is no evidence of the rescission of the contract on part of the defendant.  It is true, if we take the evidence of Montgomery, who was put on the stand by the plaintiff for the purpose of cross-examination, though he never actually refused to execute a deed, yet neither did he intend so to do even if it were demanded, but for this intention he gives as a reason, that he never entered into the alleged contract.  If, therefore, we are to give force to his testimony, there is now, and never was any foundation for the plaintiff's claim.  Under the circumstances as above detailed, we cannot but approve the action of the court in taking this part of the case from the jury.  The balance of the case has less, if possible, to support it than that founded upon the alleged parol gift.  When the plaintiff abandoned the defendant's premises, the mowing machine was left in charge of the latter, and under this arrangement it still remains in his possession.  He never professed to have any claim to it except as Allison's bailee, neither has Allison ever made a demand for it.  The same can be said of the wheat; it remains just where he left it; the defendant so far from denying his right to, or property in it,

[Railroad Company v. Patterson.]

not only filled his orders when he chose to send them, but took the pains to have the wheat ground for his use, and if he did not get every grain of it, it was simply because he did not see proper to ask for it.

The judgment is affirmed.

TRUNKETT and STERRETT, JJ., dissented.