Guzzi et al. *v.* Czaja et ux., Appellants.

Argued October 6, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*William B. Landis,* with him *Walter W. Kohler,* for appellants.

*Ernest D. Preate,* for appellees.

OPINION BY DITHRICH, J., January 14, 1949:

The learned court below enjoined defendants from transferring or attempting to transfer a restaurant liquor license to any location other than the premises for which the license had been issued and was then in effect, or to any person other than the plaintiff Mary Guzzi, or her nominee.

The chancellor's findings of fact affirmed by the court en banc, being supported by sufficient competent evidence, are conclusive on appeal. *Secretary of Banking v. Southwestern B. & L. Assn.,* 323 Pa. 317, 185 A. 703; *Williamson v. Barrett,* 147 Pa. Superior Ct. 460, 24 A. 2d 546; *Farris v. Swetts,* 158 Pa. Superior Ct. 645, 46 A. 2d 504.

The essential findings are substantially as follows: The license in controversy was obtained by defendants from one Gabriel Talarico, the prior tenant of the premises at 228 Oak Street, Old Forge, Lackawanna County, December 2, 1940, contemporaneously with the execution of the lease of the premises to defendants. Talarico agreed to transfer the liquor license to defendants for less than it was actually worth, because Pasquale Guzzi, the deceased husband of Mary Guzzi, life tenant, and father of Carl Guzzi, remainderman, the other plaintiff, was particularly desirous to have the license remain on the premises. As an added inducement therefor, he agreed to lease the premises to defendants at a reduced rental. The lease was executed and delivered to defendants in the presence of Philip Schwartz, a Justice of the Peace, who testified that the lessor said at the time of delivery that the license was to remain on the premises because of the reduced rental and the fact that defend-

ants were given two months' rent free. He further testified that the defendants said "O. K. We understand it."

The present controversy arose in 1946, on the anniversary date of the lease, when Carl Guzzi sought to raise the rent from $30 to $40 a month and also to insert in the lease a provision in writing embodying the terms of the oral agreement entered into between defendants and Pasquale Guzzi. When defendants refused to renew the lease on Guzzi's terms, he offered to pay them the same price for a transfer of the license to his mother that they had paid Talarico for the transfer of the license to them. They refused his offer but did not quit the premises. They paid the additional rental but refused to sign the new lease. In the meantime they purchased another tavern intending to have the license transferred to it. It was then that plaintiffs brought their bill praying for an injunction and other equitable relief.

Appellants contend that it was error for the court to enforce this negative covenant for the reasons that (1) the agreement was not established by the weight of the evidence; (2) it was lacking in mutuality; (3) the evidence failed to establish that the license was of any special or peculiar value to the plaintiffs; and (4) plaintiffs have an adequate remedy at law.

As to the first contention, the chancellor states that he adopted plaintiff's theory of a contemporaneous oral agreement, entered into at the same time as the written lease, as an inducement for the execution of the lease, on the testimony of Philip Schwartz, the Justice of the Peace who was present at the delivery of the lease, the attendant circumstances, and particularly in view of the license Quota Act, hereinafter more specifically referred to. To that may be added the testimony of the Talaricos that they had agreed to sell only to a transferee who would remain on the premises. There was sufficient competent testimony to support the chancellor's ninth finding of fact, to which defendants took especial exception.

They have made the chancellor's ruling thereon the subject of their first assignment of error.

As to the second contention that the agreement was lacking in mutuality, the principle is well established that mutuality of remedy is not essential to specific performance of a contract. "The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party." Restatement, Contracts, § 372, Mutuality of Remedy.

As stated by the Supreme Court in *Driebe v. Fort Penn Realty Co.,* 331 Pa. 314, 319, 200 A. 62, "Mutuality of obligation is one thing and mutuality of remedy another; the lessor and the lessee became mutually obligated to each other and each had a remedy against the other." The rule as laid down in Restatement, Contracts, supra, was adopted and followed in the *Driebe* case.

As the third and fourth contentions that the license was of no special value to plaintiffs and that they had an adequate remedy at law are closely related, they will be treated together. *Meehan v. Owens,* 196 Pa. 69, 46 A. 263, relied on by appellants in support of their argument that a court of equity will not grant specific performance of a contract for the sale of a license of a retail liquor establishment, has been held to be readily distinguishable from a case involving a transfer of a liquor license under the Act of June 24, 1939, P. L. 806, 47 PS § 744-1002, limiting the number of restaurant liquor licenses, commonly known and referred to as the Quota Act.

In *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A. 2d 692, the Supreme Court, speaking through Mr. Justice DREW, said in answer to appellant's contention that equity did not have jurisdiction (pages 361-362): "In the instant case, it is obvious that equity does have jurisdiction because a similar restaurant and liquor business to the one in question could not be purchased in the market, and therefore could not be reproduced by money

damages. In this connection, the learned chancellor properly said: 'The contract involved here is one for the sale of a certain restaurant and liquor dispensing establishment at a definite location, and the possession of the premises on which the same is located. There are no other premises nor is there any other restaurant which is exactly like the one involved here, and it would, for all practical purpose, be impossible for . . . [appellee] to prove what money he would lose if . . . [appellant] were permitted to breach this contract . . . Furthermore, this contract involves the transfer and ownership of a retail liquor license, the value of which cannot be accurately determined in an action at law. It seems unrealistic to us to close our eyes to the fact that under the Act of June 24, 1939, P. L. 806, the Quota Act, new retail liquor licenses cannot be issued by the Board in the City of Pittsburgh because the number allowed by that Act is greatly exceeded by the existing licenses. This gives to the license here involved a peculiar value depending upon the business ability and the popularity of the owner, which cannot be accurately or adequately measured or compensated for in an action at law.' " See also *Unatin 7-Up Co., Inc., v. Solomon*, 350 Pa. 632, 39 A. 2d 835.

In *Meetish Liquor License Case,* 161 Pa. Superior Ct. 468, 55 A. 2d 770, involving the transfer of a retail liquor license from person to person at the same location where the licensee had covenanted in his lease with Meetish to transfer the license to the latter, the jurisdiction of the Court of Common Pleas of Lackawanna County to entertain a bill for specific performance was recognized. Conversely, a bill to enjoin the breach of a covenant *not* to transfer a license should be on the same footing as a bill to enforce a covenant to make such a transfer.

Equitable enforcement by injunction of express negative promises is discussed by Pomeroy in § 1344 of his treatise, 4 Pomeroy, Equity Jurisprudence, 5th Ed.,

602

p. 945. After giving several examples, he states: "In all these agreements, where the stipulations are expressly negative in form, and where they belong to the class of which the specific performance would be enforced if they were affirmative in form, an injunction to restrain their violation will be granted as a general rule, and almost as a matter of course."

Appellants have also assigned as error the denial by the chancellor of their petition for a rehearing on the ground of after-discovered evidence. This was offered for the purpose of contradicting ". . . the testimony of the principal witness called by the plaintiffs" and the chancellor, in what we consider a wise exercise of his discretion, refused to hear it. "A rehearing in an equity case will not be granted to enable the applicant to impeach the credit of witnesses who testified on the original hearing.—*Rishel v. Crouse,* 29 A. 123, 162 Pa. 3": Vale Pa. Digest, Vol. 14, Equity, § 392. A petition for a rehearing is addressed to the sound discretion of the chancellor. *Myers v. Marquette,* 311 Pa. 198, 166 A. 361; *Warnick v. Conroy,* 318 Pa. 232, 177 A. 757; *Hedley v. Snipes,* 124 Pa. Superior Ct. 396, 188 A. 617.

The decree is affirmed at the cost of appellants.