480 A.2d 1056

Wilda FANNIN

v.

Ward CRATTY and Rachel Cratty, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 25, 1984.

Filed June 29, 1984.

James E. Kerr, Butler, for appellants.

William C. Robinson, Butler, for appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by appellants, Ward and Rachel Cratty, from a judgment which was entered in favor of appellee, Wilda Fannin, after a trial involving an auction sale of the Cratty's house.[1] We affirm.

On Tuesday, June 30, 1981, Wilda Fannin attended the auction of a house owned by appellants and successfully outbid all competing entrants. The property was "knocked down" to her at a price of $45,500, and she immediately posted a 10 per cent downpayment in accordance with the terms of the sale. Prior to the auction, appellee had inspected the house in the company of Blanche E. Miller, attorney-in-fact for and a representative of appellants. During Fannin's inspection, personal belongings were in the process of being removed from the house. Boxes of assort-

---

1. Rachel Cratty is now deceased.

ed paraphernalia were positioned temporarily in a manner which obstructed the view of a deteriorating basement wall.

On Saturday, July 4, 1981, appellee reappeared at appellants' property and commenced a further tour, accompanied by her insurance agent. At this time, the basement was vacant. Sometime after that visit, appellee demanded the return of her $4,550. Appellee's insurance agent testified at trial that he refused to insure the property at that time because of the hazard posed by the collapsing basement wall.

After appellee's request was denied, she commenced suit on July 23, 1981, seeking the return of her downpayment. Appellants filed a counterclaim alleging damages in the amount of $6,500, which represented the difference between the bid price of $45,500 and $39,000, the price subsequently offered to them by a third party. A jury trial commenced on May 19, 1983, which resulted in a verdict for appellee in the amount of $3,500 and against appellants' counterclaim. Post trial motions were filed and denied. Judgment was entered, and this appeal followed.

Appellants present two issues for our consideration. First, they argue that the trial court erred in instructing the jury on the applicability of the Statute of Frands.[2] They contend that, notwithstanding the oral nature of the contract, either party may seek damages incurred as a result of the other's breach. Since they claim that appellee breached the oral agreement, they seek damages equal to the loss of their bargain.[3]

2. Section 1 of the Act of March 21, 1772, 1 Sm.L. 389, 33 P.S.Sec. 1.

3. Contrary to the position reflected in the dissent, appellants do not raise an issue regarding the jury's verdict to return the hand money to the buyer nor do they claim that the Statute of Frauds was explained incorrectly. Appellants raise only one issue. They claim that "THE STATUTE OF FRAUDS DOES NOT PRECLUDE A SUIT FOR *DAMAGES* WHERE THE SUCCESSFUL BIDDER AT AUCTION BREACHES AN ORAL AGREEMENT TO PURCHASE REAL PROPERTY." (Brief for Appellants at 10) (Emphasis added). Thus, they simply assert their claim to damages equal to the difference between the bid price and the proposed sale price, a claim which they argue is not

Second, appellants argue that the trial court erred in submitting to the jury the question of whether the condition of the defective basement wall was a latent defect. According to appellants, this legal question was an issue to be resolved by the trial court.

Turning to the applicable legal standard which governs the instant case, we recognize that this Court will not reverse the trial court's order " 'absent an abuse of discretion or error of law which controlled the outcome of the case.' " *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 521, 229 A.2d 861, 862 (1967); *see also, McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 450 A.2d 991 (1982), *Litman v. Peoples Natural Gas Co.*, 303 Pa.Super. 345, 449 A.2d 720 (1982). Moreover, in reviewing the verdict, we must view the evidence in a light most favorable to the verdict winner, the appellee. Our sole duty is to decide where there was sufficient evidence to sustain the verdict. *McDevitt v. Terminal Warehouse Co., supra.* With the foregoing principles in mind, we must affirm.

To begin with, the Statute of Frauds provides in effect that no agreement for the sale of real estate will be enforced unless it is in writing and signed by the party to be charged.[4] Its fundamental purpose is to prevent assertions of verbal understandings and thus to obviate the opportunity for fraud and perjury. *Brotman v. Brotman*, 353 Pa. 570, 46 A.2d 175 (1946); *Manley v. Manley*, 238 Pa.Super. 296, 357 A.2d 641 (1976).

Appellants contend that the Statute of Frauds has no application to the instant case because the relief sought is monetary damages, rather than the alternative equitable remedy of specific performance. Appellants correctly point out that we have held that liability will be imposed for

precluded by the Statute of Frauds. It is this issue to which we direct our review.

4. "... it is universally held that sales by auction are within the provisions of the Statute of Frauds to the same extent as any other sale ... relating to land." *Polka v. May*, 383 Pa. 80, 83, 118 A.2d 154, 156 (1955).

breach of an oral agreement in an action for monetary damages notwithstanding the fact that the Statute of Frauds rendered the oral agreement unenforceable in an action for specific performance. *Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955); *Weir v. Rahon*, 279 Pa.Super. 508, 421 A.2d 315 (1980). However, in order to accept appellants' contention, the record must establish first that a breach by the buyer has occurred. In view of the jury's verdict in favor of appellee, the buyer, we may infer that the buyer did not breach the contract, and that she was entitled to rescind the oral agreement because of the existence of the latent defect. *See Adams v. Euliano*, 299 Pa.Super. 348, 445 A.2d 788 (1982), *Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532 (1974).

In reaching this conclusion, we must set forth the following guidelines:

■ The Statute of Frauds does not void those oral contracts relating to land which fail to comply with the Statute's formal requirements. *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946). It is to be used as a shield and not as a sword, as it was designed to prevent frauds, not to encourage them. *Gerlock v. Gabel*, 380 Pa. 471, 112 A.2d 78 (1955).

■ In the case of a breach of a valid oral contract by a buyer, the Statute of Frauds cannot be employed to recover a downpayment voluntarily made, in the absence of nothing more. *Roberts v. Roesch*, 306 Pa. 435, 159 A. 870 (1932). Similarly, in the case of a breach by the seller, the Statute has been construed as allowing damages to the buyer of "the money that was paid on account of the purchase". *Polka v. May, supra*, 383 Pa. 84, 118 A.2d 156. Moreover, either party who is injured as a consequence of the other party's breach may recover "the expenses incurred on the faith of the contract." *Polka v. May, supra*, 383 Pa. 84, 118 A.2d 156; *Weir v. Rahon*, 279 Pa.Super. 508, 421 A.2d 315 (1980).

The case of *Weir v. Rahon, supra,* is illustrative. In *Weir,* plaintiffs-appellees entered into an oral contract to purchase a parcel of land in a development owned by defendant-appellant, Elsie Rahon. Appellees believed that the property was owned by appellant and her sister. In reality, the property was owned by appellant and her husband as tenants by the entireties. Plaintiffs then entered into a real estate listing agreement with a real estate agency. Elsie Rahon signed the listing agreement as the real estate agent. The written agreement provided that the sale of appellees' house would be contingent upon their purchase of the parcel of land. The appellees had planned on building a house on the land. Rahon's agency located a willing buyer. The closing for the Weir's property occurred on December 2, 1978.

Rahon told the Weirs that she preferred to delay the closing on the vacant lot until after the first of the year for income tax purposes. On January 2, 1978, Rahon mailed an agreement of sale to the Weirs which provided for two installments, $2,000 to be paid before the closing and $10,000 to be paid upon delivery of the deed. The Rahons however did not sign the agreement.

On February 17, 1978, appellees mailed Elsie Rahon $2,000. Three days later, Rahon returned the check to the Weirs stating that she would not sell the property because the Weirs failed to comply with certain time deadlines set forth in the agreement. Plaintiffs filed a complaint in equity seeking specific performance and such other relief as the court deemed appropriate. Appellants raised the statute of frauds as a defense. The trial court denied appellee's request for specific performance but scheduled another hearing to determine if monetary damages should be granted.

At the second hearing, appellees presented evidence of their expenses which had been incurred after they had entered into the oral contract to sell: (1) $35.00 for digging a septic tank; (2) $40.00 to a Board of Supervisors for a septic tank test; and (3) $2,250.00 for renting a cabin for

ten months from December, 1977. Appellees stated that if the sale of the parcel of the land had been completed, they only would have rented the cabin for six months during which time their house was being built. Appellants also stated that they had spent $4,100 for the real estate commission. The trial court entered a verdict in favor of appellees for all the costs incurred except the cabin expenses which the court limited to an amount covering four months.

On appeal, we said the following:

" 'It is ... elementary that, because of the provisions of the statute of frauds, an agreement for the sale of land cannot be specifically enforced unless in writing signed by the parties to be charged or their agents thereunto lawfully authorized by writing ....' *Polka v. May*, 383 Pa. 80, 82, 118 A.2d 154, 155 (1955). Our statute of frauds, however, has been construed as permitting recovery of damages for breach of an oral agreement to sell land. *See, e.g., Polka v. May, supra; Hertzog v. Hertzog's Administrator*, 34 Pa. 418 (1859); *Immel v. Herb*, 43 Pa.Super. 111 (1910); *Stephens v. Barnes*, 30 Pa.Super. 127 (1906); *Swayne v. Swayne*, 19 Pa.Super. 160 (1902). Generally, the measure of damages in such a case is 'the money that was paid on account of the purchase and the expenses incurred on the faith of the contract.' *Polka v. May, supra*, 383 Pa. at 84, 118 A.2d at 156. *See also Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1955); *McCafferty v. Griswold*, 99 Pa. 270 (1881); *Meason v. Kaine*, 67 Pa. 126 (1870). Where the oral agreement has been obtained by fraud, however, the buyer 'may recover as damages the loss of his bargain ....' *Seidlek v. Bradley*, 293 Pa. 379, 383, 142 A. 914, 915 (1928). Such fraud 'must be actual fraud that reaches back to the original contract.' *Id.*, 293 Pa. at 382, 142 A. at 915. *See also Rineer v. Collins*, 156 Pa. 342, 352, 27 A. 28 (1893) ('According to all authorities, the fraud necessary to entitle the vendee to recover must be such

as inheres in the original agreement. A subsequent fraudulent purpose is not enough.').''

*Weir v. Rahon, supra,* 279 Pa.Superior Ct. 512–513, 421 A.2d at 317.

In *Weir*, we held that the buyers did not prove that Elsie Rahon committed fraud at the *inception* of the contract. Although this Court conceded that Elsie Rahon failed to tell the buyers that her husband jointly owned the property, we said the following:

"There was no evidence, however, that Elsie Rahon intended to mislead plaintiffs. Moreover, there was no evidence that Elsie Rahon planned at that time not to sell the property to plaintiffs. Her later refusal to sell the property to plaintiffs is insufficient to prove fraud at the time the contract was entered into. *See Rineer v. Collins, supra.* Consequently, *because there was no fraud in this case and Elsie Rahon returned the $2,000.00 paid by plaintiffs, plaintiffs are entitled only to damages for 'the expenses incurred on the faith of the contract.' Polka v. May, supra.*" *Id.* (Emphasis added)

The appellants did not dispute the propriety of that aspect of the jury's verdict which awarded damages for the costs incurred in connection with the septic tank. With respect to the other expenses, this Court concluded that appellees could recover the real estate commission since "the plaintiffs paid the real estate commission on the faith of their own oral contract." *Id.*

This Court modified the award of $900 for the rental of the cabin and said that because the rental expense was incurred *after* the appellees learned of the breach, no damages would be awarded for that purpose.

 Thus, a fair reading of the case law reveals that the measure of damages appropriate in an action for breach of an oral agreement to sell land is to restore the seller to the status quo which existed at the time that the parties entered into the agreement. A party may be compensated for the loss of a bargain only where the agreement was ob-

tained by fraud.[5] In this case, the record is devoid of any evidence which would support a conclusion that the appellee breached the contract or otherwise secured the contract through the use of fraud.

However, even assuming that appellee breached an oral contract, to award appellants damages representing the difference between the bid price and the price obtained in a later sale to a third party would be to compensate appellants for the loss of their bargain. Such an award would be tantamount to enforcing a contract which is otherwise unenforceable under the Statute of Frauds.[6] This we will not do.[7]

5. The dissent agrees with appellants and presupposes the existence of a breach by the buyer of a valid oral contract and characterizes the outcome as one where the buyer is given the opportunity to use the Statute of Frauds as a sword. In the instant case, the jury was informed of the three contentions of appellee and the alternative theories of appellants. The judge never implied which was the *correct* theory but instead apprised the jury of the formal requirements of the Statute of Frauds and the effect of the nondisclosure of a latent defect so that the jury could employ such legal precepts as tools with which to form their verdict, thereby choosing the legally acceptable theory. The judge informed the jury:

"When there exists in the property, which is the subject of a sale—this is to help you in determining some of these things that you must determine—latent defects or hidden conditions not discoverable on a reasonable examination of the property, the seller, if he has knowledge thereof, is bound to disclose such latent defects or conditions to the buyer, and his failure to do so may be made the basis of charge of fraud, or a basis to rescind the contract. If the condition is readily ascertainable upon a reasonable examination, then the seller is not under a duty to disclose." (T-145)

In light of the jury's findings, the buyer was permitted to avoid the purchase on the basis of the existence of a latent defect. *See infra* at 5.

6. Appellants' reliance on *Harris v. Dawson,* 479 Pa. 463, 388 A.2d 748 (1978) is misplaced as that case involved a written contract for the sale of real estate.

We note that there is also some question as to whether appellants could successfully prove a direct causal relationship between appellee's action in rescinding the agreement and the drop in appellants' sale price.

7. It should be noted that appellee herein was able to avoid the contract through appellants' fraudulent concealment of a latent de-

Under this line of reasoning, we agree with the trial court which denied appellants' counterclaim and granted appellee's claim for the return of her downpayment.

■■■■■ Appellants also contend that the trial court erred in submitting the question of the existence of a latent defect to the jury with respect to the deteriorating wall.[8] We reject this contention.[9]

■■■■■ We recognize that where the evidence alone would justify an inference of the disputed fact, the issue must be submitted to the jury, no matter how strong or pervasive may be the countervailing evidence. *Hawthorne v. Dravo Corp.*, 313 Pa.Super. 436, 460 A.2d 266 (1983), *Heffernan v. Rosser*, 419 Pa. 550, 215 A.2d 655 (1966). At trial, conflicting testimony was presented concerning the time and frequency of appellee's inspection of the property, the exact time when the deteriorating wall became evident, and the degree to which the basement was illuminated. Accordingly, we will not disturb the trial court's resolution of the issue.

Judgment is affirmed.

WIEAND, J., filed a dissenting opinion.

fect. We do not decide whether she could have recovered damages for her loss of the bargain. *See, Seidlek v. Bradley, supra.*

**8.** This issue is omitted from appellants' Statement of Questions Involved. Although normally no point is to be considered which is not set forth, because the issue was raised below, addressed by the lower court and covered at length in appellants' brief, in the interests of fairness we will dispose of the issue. *See* Pa.R.A.P. 2116, *In Re Davis*, 288 Pa.Super. 453, 432 A.2d 600 (1981), *Commonwealth v. Jones*, 256 Pa.Super. 366, 389 A.2d 1167 (1978).

**9.** The dissent further asserts that because the jury was instructed that the buyer and seller both must sign an agreement to satisfy the Statute of Frauds, the jury was misled into finding that there was no written contract. On appeal, neither party asserts the existence of a written contract. Thus, the dissent reaches an issue which was not raised by the parties and which has therefore been waived. It should also be noted that the auctioneer's signature on the Buyer's Agreement was inserted by his wife.

WIEAND, Judge, dissenting:

Wilda Fannin was the successful bidder at a public sale of improved real estate owned by Ward and Rachel Cratty. After the property had been "knocked down" to Ms. Fannin for $45,500.00, she made a deposit of ten (10%) of the purchase price in accordance with the conditions of sale. Less than a week later, she demanded a return of her deposit; and when her demand was refused, she commenced an action in assumpsit to recover the deposit. The sellers filed a counterclaim for the difference between Ms. Fannin's bid price of $45,500.00 and the price of $39,000.00 which they were able to obtain upon a resale after the original buyer persisted in her refusal to take title and pay the balance of the purchase price.

At trial, the evidence showed that after the real estate had been "knocked down" to Ms. Fannin, she signed an agreement as follows:

180a

PLAINTIFF'S EXHIBIT 3

A PROPERTY SALE BUYERS AGREEMENT

PLAINTIFF'S EXHIBIT 3

JUNE 30, 1981.

I, the Buyer (or buyers) —Wilda Fannin

AGREE TO PAY DOWN DAY OF SALE, 10% OF PURCHASE PRICE, and do agree to Pay Balance In Full, upon delivery of clear deed.

FULL PURCHASE PRICE $45,500.00

PAID DOWN (10%) $4,550.00

BALANCE DUE UPON DELIVERY OF CLEAR DEED $40,950.00

DATE 6/30/81

Wilda Fannin (Buyer)

Wilda Fannin (Buyer)

David J. Wachter (Auctioneer)

BRIEF DESCRIPTION OF PROPERTY: Ward & Rachel Cratty Res. -6 mi. West of Butler, Pa. on Rt. 422 to Garden Gate Restaurant, then North on Country Club Rd.

2 Acres, black top road, 6 Rm, Alum, siding house, 1½ bath, 2 car garage, Oil heat, etc.

Note: Bal, Due with Bank approval in 90 days
OK'd with Blanche Miller.

Buyer RDH / Prospect, Pa.
865-2462

EXHIBIT D

The evidence did not establish, however, that the person signing on behalf of the sellers had been authorized in writing to sign the agreement on their behalf.

The trial court instructed the jury which heard the evidence that the buyer could recover her deposit on any one of three possible theories. The first theory presented to the jury was that the buyer, by making a bid, had merely offered to purchase the real estate and that her offer had been withdrawn prior to acceptance by the sellers.[1] The second theory on which recovery could be based was that the sellers had committed a fraud by concealing latent defects in the foundation of the dwelling house. The third theory on which recovery could be effected, the court said, was that the writings evidencing the agreement of the parties failed to satisfy the requirements of the statute of frauds. Thus, the court told the jury "... the third contention of the plaintiff is that the statute of frauds was not completely [sic] within this particular transaction, it being a sale of real estate, and, therefore, since it was not complied with the plaintiff is entitled to receive back the money paid down after the bid at auction." The court also told the jury that an agreement for the sale of real estate, to comply with the statute of frauds, had to be signed by both buyer and seller. The necessary implication of these instructions was that the buyer should be permitted to recover her down payment and the sellers' counterclaim should be disallowed unless an agreement had been signed not only by the buyer

1. The record does not disclose that the sale was "without reserve." See: *Brereton Estate*, 355 Pa. 45, 57, 48 A.2d 868, 873 (1946); Restatement (Second) Contracts § 28(1).

but also by the sellers or their agent duly authorized in writing. The jury returned a verdict which reimbursed the buyer for part of her down payment, i.e., $3,500.00, and denied recovery on the sellers' counterclaim. Post-trial motions were denied, and judgment was entered on the verdict of the jury. The sellers appealed.

The sole issue on appeal is defined in appellants' "Statement of Question Involved" as follows: "Whether the court below erred in instructing the jury that the provisions of the statute of frauds must be complied with where the causes of action pled were for damages incurred as a result of breach of an agreement to sell/buy real property?" Appellants argued orally and in their brief that the trial court's jury instructions had been incorrect and had erroneously applied the statute of frauds to the causes of both plaintiff and defendants.[2] This requires that we review the correctness of the trial court's jury instructions as they pertained to the statute of frauds. Our duty to review the court's instructions is not curtailed, as the majority contends, by the fact that in preparing their brief the appellants, in compliance with Pa.R.App.P. 2119(a), placed only an abbreviated form of the "question involved" at the head of their argument.[3]

My review of the trial court's instructions to the jury regarding the statute of frauds discloses that the trial court fell into serious error which requires that a new trial be granted.[4] The statute of frauds is an affirmative defense

2. This is illustrated by the argument appearing on page 14 of the appellant's brief that "[t]he injection of the statute of frauds into the trial of the case, which did not control either the Plaintiff's or the Defendants' case, was reversible error and a new trial is the only remedy."

3. The majority's argument to the contrary appears in footnote 3. (At p. 330).

4. Inasmuch as the sole issue on appeal is the correctness of the trial court's instructions regarding the statute of frauds, I find it neither helpful nor appropriate to hold, as the majority does, that it "will not disturb the trial court's resolution of the issue" of a latent defect in the basement wall. (At p. 337). Because the issue is not which party should ultimately prevail, I find it also inappropriate to suggest, as the

which limits judicial authority to afford a remedy. *Haskell v. Heathcote*, 363 Pa. 184, 188, 69 A.2d 71, 73 (1949). It does not render void those contracts relating to land which are oral or fail to comply with the statute's formal requirements. *Zlotziver v. Zlotziver*, 355 Pa. 299, 302, 49 A.2d 779, 781 (1946); *Allison v. Montgomery*, 107 Pa. 455, 460 (1884); *Bethlehem Steel Corp. v. Tri State Industries, Inc.*, 290 Pa.Super. 461, 467, 434 A.2d 1236, 1239 (1981). The purpose of the statute of frauds is to protect landowners and guard them against perjuries in support of alleged oral agreements to convey. *Williams v. Moodhard*, 341 Pa. 273, 280, 19 A.2d 101, 104 (1941); *Sferra v. Urling*, 328 Pa. 161, 168, 195 A. 422, 426 (1937); *Brodhead v. Reinbold*, 200 Pa. 618, 623, 50 A. 229, 230–231 (1901); *Tripp v. Bishop*, 56 Pa. 424, 429 (1867). The statute of frauds has been designed to prevent frauds, not to encourage them. *Gerlock v. Gabel*, 380 Pa. 471, 477, 112 A.2d 78, 81 (1955); *Haskell v. Heathcote, supra; Haines v. Minnock Construction Co.*, 289 Pa.Super. 209, 216, 433 A.2d 30, 33 (1981); *Lehner v. Montgomery*, 180 Pa.Super. 493, 500, 119 A.2d 626, 630 (1956). In *Simplex Precast Industries, Inc. v. Biehl*, 395 Pa. 105, 149 A.2d 121 (1959), Justice Musmanno stated:

> Ever since that venerable statute was armed with authority to prevent the assertion of verbal understandings regarding title to land, it has been called upon to strike down agreements which were not committed to writing. The laudable purpose of this guardian of truth is to prevent frauds and perjuries. Occasionally, however, an embattled property owner or prospective purchaser of land, summons the statute to enforce a condition which does not seem to coincide with principles of honesty and fair dealing. In such cases the Courts should study the situation involved to make certain that the statute is not

majority does, that it "agree[s] with the trial court which denied appellant's counterclaim and granted appellee's claim for the return of her down payment" (At p. 337) and that "the record is devoid of any evidence which would support a conclusion that the appellee breached the contract or otherwise secured the contract through the use of fraud." (At p. 336).

being used to perpetrate fraud and perjuries rather than prevent them.

*Id.*, 395 Pa. at 108–109, 149 A.2d at 123. In the same vein, Professor Corbin has said that the purpose of the statute of frauds is "the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral contracts that have in fact been made; *it is not to create a loophole of escape for dishonest repudiators.*" 2 Corbin on Contracts § 498, pp. 680–681 (1950) (emphasis added).

The law is eminently clear that the statute of frauds cannot be used to support a cause of action to recover a down payment voluntarily made pursuant to a valid oral contract to purchase land. *Roberts v. Roesch*, 306 Pa. 435, 440, 159 A. 870, 871 (1932). See also: *Brunetto v. Ferrara*, 167 Pa.Super. 568, 571, 76 A.2d 448, 450 (1950).

In the instant case, appellee voluntarily made a deposit or down payment and signed an agreement to purchase real estate. Even if the agreement failed to meet the formal requirements of the statute of frauds, appellee was not entitled to use the statute of frauds as a sword to recover the down payment thus made. When the trial court instructed the jury otherwise, it fell into error.

The trial court told the jury that the appellee-buyer could recover her down payment on any one of three, separate theories. The jury did not answer special interrogatories but returned a general verdict. Thus, there is no way in which a reviewing court can ascertain whether or not the jury's verdict was based on the erroneous instruction that recovery could be based on a failure to achieve full compliance with the formal requirements of the statute of frauds. Consequently, a new trial is necessary. *Rivera v. The Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 326 Pa.Super. 509, 522–523, 474 A.2d 605, 612 (1984). See also: *Fama v. Smith*, 303 Pa.Super. 414, 416, 449 A.2d 755, 756 (1982).

The trial court's instructions were also incorrect as they pertained to the applicability of the statute of frauds to the sellers' counterclaim. The statute of frauds is found in the Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1. It does not require a written agreement of sale signed by both parties. The statute requires, rather, that the writing be signed by "the parties so making or creating [the interest in real estate] or their agents, thereunto lawfully authorized by writing." *Id.* See: *DiBenedetto v. DiRocco,* 372 Pa. 302, 305, 93 A.2d 474, 475 (1953); *Stevenson v. Titus,* 332 Pa. 100, 105, 2 A.2d 853, 856 (1938); *Stephens v. Carrara,* 265 Pa.Super. 102, 107, 401 A.2d 821, 823–824 (1979). The purpose of the statute of frauds is to prevent the perpetration of fraud where the owner of real estate has not actually made a conveyance or agreement to sell. *Lehner v. Montgomery,* 180 Pa.Super. 493, 500, 119 A.2d 626, 630 (1956).

A review of the evidence and pleadings in this case discloses that the buyer admitted making a bid of $45,-500.00. She contended, however, that her admitted bid constituted merely an offer which could be withdrawn before it was accepted. Moreover and in any event, she contended, the sellers had fraudulently concealed the deteriorating condition of "the substructure and foundation of the house." The appellant sellers similarly admitted the authority of their agent to sell. They argued the existence of a written agreement signed by the buyer and a wrongful failure by the buyer to perform her agreement.

Competent evidence of the foregoing facts was produced and submitted to the jury. If the jury found that appellee's bid was merely an offer which had been withdrawn prior to acceptance, appellee was entitled to recover her deposit. In that event, there was no agreement, and appellee could have no liability to the sellers. If there was an agreement, appellee could avoid the agreement if the sellers had fraudulently concealed the deteriorated condition of the building. The agreement was not subject to avoidance, however, merely because the auctioneer's authority to sell had not

been evidenced by a prior written agreement signed by the sellers. The sellers, who are the parties intended to be protected by the statute of frauds, have admitted the authority of the auctioneer. The buyer personally signed the agreement of sale. Under these circumstances, the statute of frauds could not be used by the buyer to repudiate a valid agreement which she had executed for the purchase of real estate.

If the agreement for the sale of real estate was legally and properly signed by the buyer but not by the seller, the seller was entitled to enforce the agreement against the buyer even though the statute of frauds may have prevented the buyer from specifically enforcing the contract against the seller. Restatement of Contracts § 372(1) and Illustration 5, now incorporated into Restatement (Second) of Contracts § 363, comment c. See: *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 319–320, 200 A. 62, 64–65 (1938); *Guzzi v. Czaja*, 163 Pa.Super. 597, 600, 63 A.2d 426, 428 (1949). See also: *Erkess v. Eisenthal*, 354 Pa. 161, 47 A.2d 154 (1946); 5A Corbin on Contracts §§ 1190, 1192. "Mutuality of obligation is one thing and mutuality of remedy another." *Driebe v. Fort Penn Realty Co., supra*, 331 Pa. at 319, 200 A. at 64. Mutuality of obligation is essential to the existence of a contract. A valid contract, however, cannot be avoided merely because the remedies available to the parties are not identical. A contract for the purchase of real estate which fails to comply with the formal requirements of the statute of frauds is a valid contract. In such a contract the obligations of the parties are mutual. The statute of frauds has an effect only on the remedies available to the parties. The law does not require that those remedies be precisely the same for each party.[5]

5. The failure to make the distinction between mutuality of obligation and mutuality of remedy is evident in *Burg v. Betty Gay of Washington, Inc.*, 423 Pa. 485, 225 A.2d 85 (1966). Lack of authority to contract destroys the mutuality of the parties' obligations. That situation must be distinguished from the situation where authority exists but has not been put in writing as required by the statute of frauds. Such a contract is valid; only the remedies are limited by the

To summarize, the correctness of the trial court's jury instructions pertaining to the statute of frauds was properly preserved for appellate review and requires consideration by this court. Those jury instructions, in my opinion, were egregiously in error. Therefore, I would reverse and remand for a new trial. The majority, believing the verdict proper despite erroneous jury instructions concerning the statute of frauds, would affirm. Because the majority, in my judgment, has established bad precedent and has failed to apply the law correctly to the present litigation, I must respectfully dissent.

statute of frauds. The contract is not invalidated merely because the remedies of the parties are not mutual.